RICHARD BOSSUK et al., Respondents, v ALFRED STEINBERG, Appellant.

First Department, August 12, 1982

APPEARANCES OF COUNSEL

*Jules J. Ravo* of counsel (*Reardon & Sclafani, P. C.,* attorneys), for appellant.

*Martin A. Wein* of counsel (*Salierno & Wein,* attorneys), for respondents.

OPINION OF THE COURT

BLOOM, J.

Defendant, a resident of Potomac, Maryland, and an employee of the National Institute of Health, is charged with an assault and battery upon plaintiffs Richard Bossuk and Arlene Bossuk. Seymour Bossuk, the third plaintiff, seeks to recover for loss of the services of his son, Richard, and of his wife Arlene.

Service of the summons and complaint was sought to be effected upon Dr. Steinberg at his home, a one-family dwelling located at 88-14 Bellsmill Road, Potomac, Maryland. Copies of the documents were forwarded to the Sher-

iff of Montgomery County, Maryland, and Deputy Sheriff Clagett was assigned to effect the service. On three occasions, once on August 21, 1979 at 9:25 A.M., and twice on August 23, 1979, initially at 8:00 A.M. and then again at 9:45 P.M., he attempted to make personal service on defendant. On each occasion he was told that the defendant was not at home. Clagett is not certain of the persons to whom he spoke on his visit of August 21 and his second visit of August 23. However, he is certain that on his first visit on August 23 he spoke to a woman whom he assumed to be Mrs. Steinberg. At that time, he identified himself, told her of his purpose and left with her a business card indicating his name, address and telephone number and indicating that he was a Deputy Sheriff of Montgomery County, Maryland. He requested that Dr. Steinberg telephone him. Defendant never called.

On August 27, following his third visit to the Steinberg mènage, Clagett executed an affidavit indicating his attempts to make service and that he had been unable to do so. The affidavit and the summons and complaint were then, in regular course, transmitted to plaintiffs' attorney. Thereafter, plaintiffs' attorney returned copies of the summons and complaint to the Sheriff of Montgomery County with instructions to effect service pursuant to CPLR 308 (subd 2). The letter indicated that such service was to be made by delivering a copy of the summons and complaint to a person of suitable age and discretion at defendant's actual place of business, dwelling place or usual place of abode and by mailing another copy addressed to defendant at his last known residence. The summons and complaint were again turned over to Sheriff Clagett who, on September 13, 1979 at 7:50 A.M. attended at the Steinberg residence. When he applied for admission two young people responded. According to Clagett the two were a young man, approximately 15 years of age, and a young lady who appeared to be 14 years old. Despite the fact that he identified himself and made known his purpose, they refused to open the door. Clagett asked for Dr. Steinberg and was informed that he was not in. He then requested that the door be opened so that the summons and complaint could be left with them for Dr. Steinberg. Again, they refused to open the door.

To understand what subsequently transpired it is essential that a description of the entranceway be given. Clagett described the door leading to the house as an ordinary metal or wooden door with a glass pane in the upper part thereof. Immediately adjacent to the door and approximately of similar proportions was a glass pane which ran from the ceiling to the floor. The two young people stood behind the glass pane so that they could be observed by Clagett and they, in turn, could observe him.

When the young people refused to open the door Clagett informed them that he was leaving the paper on the stoop in front of the glass pane and proceeded to do so. Throughout the proceedings the two young people who were attentively watching from behind the glass pane were in a position to observe everything done by him. Clagett then left, informed his office of what he had done and someone else in the office mailed a copy of the summons and complaint to Dr. Steinberg at his residence. Subsequently, the mailed copy was returned with the envelope marked "Out of Town, October 24".

On October 2, 1979, plaintiffs' attorney sent a letter to defendant notifying him that service had been effected pursuant to law and suggesting that he take such action as he deemed appropriate to protect his rights. In response thereto he received a letter from "The Steinberg Family" requesting that he be patient until Dr. Steinberg returned "from South America in 4 weeks". Thereafter Dr. Steinberg turned the matter over to the United Service Automobile Association (USAA) which had issued a policy of liability insurance to him. No claim was made that service of process had not been made as required by law. By letter dated December 4, 1979, addressed to defendant, to the plaintiffs and to the plaintiffs' counsel, USAA disclaimed coverage under its policy. Subsequently, USAA brought action in the Supreme Court, Queens County, for a judgment declaring that it was neither required to defend this action nor to pay any judgment recovered against defendant therein. During the early part of that action defendant's time to answer in this action was extended by stipulation. By order dated January 7, 1980 entered in the declaratory judgment action, this action was stayed pend-

ing disposition of the declaratory judgment action. That order was resettled on February 28, 1980 to exempt from the stay any motion by defendant to dismiss the complaint in this action based either on the Statute of Limitations or lack of personal jurisdiction over the person of defendant. It is worth noting that the lifting of the stay was conditioned on the specified motions being made returnable "no later than March 10, 1980". This motion to dismiss "on the ground that the Court does not have jurisdiction of the person of the defendant" was made returnable on March 26, 1980.

Be that as it may, Special Term referred the issue for hearing before a special referee. At that hearing Sheriff Clagett testified as indicated above. Defendant's daughter admitted that she and her brother were present when Clagett called. She testified that he did not identify himself and that she did not see him lay any papers on the ground. She also testified that some time in the past a sister had been kidnapped and that she had been instructed by her father never to admit strangers. Dr. Steinberg testified that as an employee of the National Health Institute, approximately 60% of his time was spent traveling "around the world, lecturing". The first notice which he received of the pendency of the suit against him was the October 2 letter from plaintiffs' attorney. While he had previously been notified that someone had been coming to the house asking for him, he had not been told the reason therefor. He also testified that he instructed the members of his family that if he was to be away for any extended period to return all mail which "looked important". However, he was quite vague about the periods of time he was out of the country during the late summer and early fall of 1979.

Based on the testimony adduced at the hearing, the special referee reported:

"I give complete credence to Deputy Sheriff Robert K. Clagett's testimony of his attempted service on the defendant on August 21, 1979, August 23, 1979 at 8 A.M. and August 23, 1979 at 9:45 P.M.

"I find that service was effected on the defendant on September 14, 1979 [*sic*] when the Sheriff placed the sum-

mons and complaint on the door step in the view of the defendant's son as depicted in exhibit 5A in evidence, and mailed copy to defendant's residence exhibit 7 in evidence.

"I give no credence to defendant's vague testimony that he may have been out of town, and he did not receive summons and complaint in 1979. See exhibit 10 in evidence letter dated October 7, 1979 from defendant's family to plaintiffs' attorney and I further find the defendant attempted to evade service."

He recommended that defendant's motion to dismiss the summons and complaint be denied in all respects. His recommendation was adopted by Special Term and this appeal is from the order denying the motion to dismiss the summons and complaint.

Contrary to the suggestion embodied in the dissenting opinion of our brother LUPIANO, this case involves no question of constitutional dimension. The sole, and rather narrow question before us is whether the actions of Clagett constituted compliance with CPLR 308 (subd 2), and 313. CPLR 308 (subd 2) provides that personal service upon a natural person is made by delivery within the State to a person of suitable age and discretion "at the actual place of business, dwelling place or usual place of abode of the person to be served and by mailing the summons to the person to be served at his last known residence". CPLR 313 makes the same rule applicable to nonresidents served outside the State who are subject to our jurisdiction under CPLR 301 or 302 provided that service is made by a resident of the State in which service is made or by anyone else duly qualified to serve process in that State or by an "attorney, solicitor, barrister, or equivalent in such jurisdiction".

We may start with the premise that a defendant may not superimpose upon the requirements of statute his own additional requirements as a prerequisite to obtaining jurisdiction over his person. Thus, the refusal of the defendant or the refusal of members of his household to accept the mail service made upon him may be disregarded. While the defendant may control the acceptance of mail by his household, he may not thereby negate the effectiveness of

service otherwise effective under the law. We are then left with the issue of whether the refusal by "a person of suitable age and discretion" to admit Sheriff Clagett warrants setting aside the service. We think not. While we have not been able to find any authority directly in point, there is precedent which points the way. Thus, in *duPont, Glore Forgan & Co. v Chen* (41 NY2d 794), the Sheriff was denied admission to the defendant's apartment by the doorman. Thereupon, he left the summons and complaint with the doorman. Despite the absence of any familial relationship between the defendant and the doorman, the Sheriff was held to have satisfied the statutory requisite that the summons be left with a person of suitable age and discretion. In *206 E. 63rd St. Corp. v Price* (75 AD2d 598), service was sought to be made at the defendant's place of business. The door was opened by a person of "suitable age and discretion" who, observing the papers about to be delivered to him, immediately closed it. The papers were then deposited in the letter drop and the person to whom they were to be handed was observed to pick them up. Service was held to be valid. In *Chernick v Rodriguez* (2 Misc 2d 891) the process server identified himself to defendant who refused to open the door. The process server then left the summons and complaint in the vestibule where they were retrieved by defendant. Again service was held valid.

Here, Clagett made known his purpose and identity. When he was refused admission he left the papers in front of the glass pane. He was observed to do so by defendant's son. While these facts are not identical with the facts in the cases cited, they are sufficiently close to warrant the special referee's conclusion that this constituted compliance with the first prong of CPLR 308 (subd 2).

Parenthetically, the son was never brought up to testify. The excuse offered was that he was then (Nov. 6, 1980) engaged in taking final exams. However, the daughter was produced although on the same day she, too, had final examinations.

On the basis of the record before us we are convinced that the claim of defendant was conceived and nurtured in bad faith and, as held by the special referee, was part of a

deliberate and calculated effort to evade service. Sheriff Clagett, in his effort to effect service, did all that a reasonable man could be expected to do. We think that statutes dealing with service of process are required to be construed so as to give effect to their purpose (*Fashion Page v Zurich Ins. Co.*, 50 NY2d 265; *Tauza v Susquehana Coal Co.*, 220 NY 259; *DeCandia v Hudson Waterways*, 89 AD2d 506). So read we hold that the summons and complaint were delivered to "a person of suitable age and discretion" who was a member of defendant's household.

Accordingly, the order of the Supreme Court, Bronx County (MERCORELLA, J.), entered on or about June 23, 1981 confirming the report of the special referee denying the motion of defendant to dismiss the complaint upon the ground that the court did not have jurisdiction over his person should be affirmed, with costs.

MURPHY, P. J. (dissenting). I agree with the dissenting memorandum of Justice LUPIANO and I would add the following comments.

For purposes of this discussion, all questions of credibility will be resolved in plaintiffs' favor. Thus, it will be assumed that defendant instructed his children not to accept service. It will be also assumed that the children picked up the summons and complaint and turned them over to defendant. The more narrow issue thus presented is whether the children's evasiveness may be charged to defendant so as to validate service that is otherwise deficient under CPLR 308 (subd 2).

Generally, where a defendant resists service, a summons may validly be left within his immediate reach (*McDonald v Ames Supply Co.*, 22 NY2d 111, 115; *Matter of Turecamo*, 96 Misc 2d 120). However, in this case, the summons was not left within the immediate reach of the defendant; it was placed near his children. Assuming that the children were "person[s] of suitable age and discretion" to accept service under CPLR 308 (subd 2), the principle recognized in the *McDonald* case (*supra*) should not be extended to evasive action taken by third persons on a defendant's behalf. Even if the actions of these third parties are concededly evasive, the courts should, as a matter of policy, refuse to predicate service on such evasiveness. While a reason-

able assumption can be made that an evasive defendant will be apprised of the contents of a summons laid directly before him by a process server, the same may not be said about a summons set before an evasive third party. In such an instance, the courts may not proceed with the same degree of certitude that a defendant has received notice of the proceeding from the third person.

Therefore CPLR 302 (subd 2) should be construed quite strictly in this type of situation. Even though proper service was made upon defendant by mail, service was not delivered to a person of suitable age and discretion at his dwelling place. Even though defendant might have received actual knowledge of the summons left upon the stoop from his children, the fact remains that the strict requirements of CPLR 308 (subd 2) have not been met (*Feinstein v Bergner,* 48 NY2d 234, 241).

The motion to confirm should be denied and the motion to dismiss should be granted.

LUPIANO, J. (dissenting). This is an action sounding in assault and battery. Plaintiffs seek to recover compensatory and punitive damages for personal injuries allegedly arising out of an incident occurring on August 26, 1978 in Bronx County, New York, and for loss of services. Plaintiffs maintain that service of the summons and complaint upon the defendant was effected pursuant to CPLR 308 (subd 2), which provides, in pertinent part, that personal service upon a natural person shall be made "by delivering the summons * * * to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by mailing the summons to the person to be served at his last known residence". The issue on appeal is the validity of service purportedly made upon defendant at his Potomac, Maryland, residence pursuant to CPLR 308 (subd 2).

The summons and complaint were forwarded to Deputy Sheriff Clagett of Montgomery County, Maryland, for service upon defendant. Clagett, on August 21, 1979, attempted to serve defendant personally, but failed after being informed that defendant was not at home. He attempted service on August 23, 1979 on two occasions, but

again was informed by someone (who he presumed is defendant's wife) that defendant was not at home. On the first occasion, on August 23, he called at 8:00 A.M., and after being informed that defendant was not at home left his card, asking the woman to have defendant call him. His second call on said date was at 9:45 P.M. He returned the summons and complaint to plaintiff's attorney with an affidavit reciting his failed efforts to effect service. Plaintiff's attorney reforwarded the summons and complaint to Sheriff Clagett with instructions to effect service pursuant to CPLR 308 (subd 2).

According to the sworn affidavit of Clagett, as well as his testimony at a hearing before the special referee on defendant's motion to dismiss the complaint on the ground that the court did not have jurisdiction of the person of the defendant (CPLR 3211, subd [a], par 8), he returned to defendant's residence on September 13, 1979 at 7:50 A.M., knocked on the front door, saw a young boy about age 15 and a young girl, age 14, standing behind the door, identified himself to the children after ascertaining that defendant was not at home, explained that he was serving these papers and asked if the children would accept them, and when the children refused to open the door or accept them, left them by the full-length window near the door (stoop), in full view of the children. At all times Clagett was dressed in civilian attire, did not utilize a marked official vehicle, did not display a badge, but did orally identify himself as Deputy Sheriff.

While the Deputy Sheriff's affidavit executed on September 14, 1979 states that the summons and complaint were mailed, the Sheriff testified that he did not mail them, that he knows nothing about the mailing and assumes that the papers were mailed. He declared that while the affidavit of service states that a copy was mailed on September 13, 1979, he did not mail the copy but only executed service. He testified that there was someone in the Sheriff's office whose job it was to place summons in the envelope and mail it out, to wit, Ms. Virginia Burdett, and that there is another girl who does it in Ms. Burdett's place. He further stated that he did not believe his office uses the Pitney Bowes postage meter to affix the postage.

Subsequently, he declared that "someone from the county picks the mail up, and they affix the postage to it. Our office does not do it."

The envelope containing the summons and complaint which it is contended was mailed to defendant was purportedly returned, stamped "Out of Town, October 24".

Although the affidavit of Clagett states that the complaint was mailed upon personal knowledge, he does not know if the envelope was returned to the Sheriff's office, having no personal knowledge of the mailing events, or how or by whom the legend was stamped on the envelope. The envelope which bears a postmark September 14, 1979, and indicates that a postage meter stamped 28 cents postage was affixed thereto, was offered by plaintiffs as a business record made in the ordinary course of business of the Montgomery County Sheriff's Department and was accepted in evidence by the referee.

Ellen Steinberg, defendant's daughter, who was identified by Clagett as one of the individuals standing behind the door, testified that she did not recall the events of September 13, 1979 specifically, but that Clagett asked if her "dad" was at home, and she said "no"; that she never saw the summons and complaint, nor did she give them to her father; that the front door cannot be opened from the inside, and that she was instructed not to open the door for strangers, which prompted her refusal to open the door and accept the papers from Clagett.

Dr. Steinberg, the defendant, testified that approximately 60% of his time is spent delivering lectures around the world. He recalled that during the summer and autumn of 1979 he had traveled to Canada, Equador, Boston and "a few other cities in the United States", but did not recall the exact dates of these trips. He declared that he was never served with, nor did he see the summons and complaint, other than when shown by his attorneys; that first notice of this lawsuit was in a letter dated October 2, 1979 from plaintiffs' attorney; that his family was instructed to return "important mail" at times that he was away from home and that at some time he contacted his insurance carrier seeking to have them defend this claim.

Based upon this evidence and finding the testimony of Sheriff Clagett credible, and that of Dr. Steinberg incredible, the referee found that Sheriff Clagett had diligently attempted service in August, 1979 and had effected service by September 14, 1979 (by delivery to defendant's son plus mailing) and that defendant was attempting to evade service.

The referee's report was confirmed, service upheld, and defendant's motion to dismiss denied.

Service of process (by whatever method utilized), in order to afford the recipient elementary due process under the United States and New York State Constitutions (US Const, 14th Amdt, § 1; NY Const, art I, § 6) must comply with the following pronouncement of the United States Supreme Court: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality *is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action* and afford them an opportunity to present their objections * * * *The notice must be of such nature as reasonably to convey the required information* * * * and it must afford a reasonable time for those interested to make their appearance * * * But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied." (*Mullane v Central Hanover Trust Co.*, 339 US 306, 314-315; emphasis supplied.)

In this regard, CPLR 308 (subd 2) affords a method of service via *actual delivery* to a person of suitable age and discretion, plus the required mailing and filing of proof of service, *without the requirement* that *due diligence be shown in attempting personal service upon defendant* (see McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C308:2, pp 206-208).

The "delivery" of the summons to defendant's children in the manner done in the instant circumstances was not such "actual" delivery as would reasonably be calculated to apprise defendant of the instant lawsuit, where

. (1) delivery was made outside a closed glass door after the Sheriff was apprised that defendant was not at home

and that the children would not forward the summons and complaint to defendant, and

(2) where the Sheriff could have affixed the summons to the door in the manner proscribed under CPLR 308 (subd 4), having with due diligence not been able to effect service under CPLR 308 (subd 1 or 2), but failed to do so (or personally served the "wife" in August, 1979 on the three occasions when she purportedly received him).

Service was not effected as to afford defendant elementary due process under the foregoing principle, even though credit is given the Sheriff's testimony as to the manner of delivery of the summons and complaint by leaving it in view of the defendant's children, but in an open area outside a locked door, vulnerable to loss or disappearance due to the elements or other agency.

The cases which hold that something "less" than actual delivery of the papers to be served is allowable where the defendant is present or nearby and is avoiding service are inapposite.

Study of the transcript of the hearing before the special referee discloses that the referee's finding that the defendant was evading service is not supported by the evidence. Defendant was a professor who lectures throughout the world, and whose profession requires that he be away from home a good portion of the time, including the pertinent period of August and September, 1979, when service was attempted. Moreover, his instructions to family members not to open the door to strangers clearly was reasonable, and not a calculated avoidance of service. The letter dated October 7, 1979, addressed to plaintiffs' attorney and signed "The Steinberg Family", written in response to a letter from the plaintiffs' attorney informing Dr. Steinberg of this action and cited by the referee as support for the finding that defendant had attempted to evade service, does not contradict the defendant's testimony that he may have been away in September, 1979, or indicate in any way that the defendant received the summons and complaint. Deputy Sheriff Clagett simply testified that he was informed by third persons that the defendant was not home when he attempted to serve process; no other evidence was

adduced tending to show that the defendant evaded service.

Where the defendant is *not* present and there is no evidence of evasion and service is attempted under CPLR 308 (subd 2) by delivery to a person of suitable age and discretion, it is clear that actual delivery must be effected. The delivery must be reasonably calculated so as to assume with a fair degree of foreseeability that defendant will ultimately receive the summons and complaint from such third person(s) and thereby be notified of the pending action in accordance with procedural due process requirements as above enumerated.

In *206 E. 63rd St. Corp. v Price* (75 AD2d 598), where the court (p 599) ordered service to be made by "personally serving a person of suitable age and discretion at Defendant's place of business", the process server knocked on the frosted glass door and the man inside asked what he had. The server stated he had some legal documents. The man inside opened the door some six inches, saw that the process server had a summons, and immediately closed the door. Thereupon, the server inserted the summons in the mail chute and *observed the individual behind the door remove and take the papers;* whereupon the required mailing followed. Under such circumstances, the court held the service valid.

Here, by contrast, the intended recipient(s) were not adults, refused (for apparent good reason) to open the door, and specifically notified the Sheriff, who was attempting service, that they would not forward the papers to defendant, whereupon the process server, instead of reattempting service by actual delivery or affixing the summons and complaint to the door (see CPLR 308, subd 4), left the papers in an outside area subject to loss or disappearance.

Under the circumstances herein, the method utilized did not meet the elementary due process requirements of service reasonably calculated to notify defendant of the action.

It is axiomatic that effective mailing alone, without actual delivery in compliance with due process, is ineffective (see *Mittelman v Mittelman,* 45 Misc 2d 445, 447;

McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C308:2, pp 206-208; 1 Weinstein-Korn-Miller, NY Civ Prac, par 308.13a). Indeed, not only was there no compliance with the first requirement of the two-pronged mandate, to wit, delivery of the summons to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served, but the proof of mailing of the summons is problematical. There was insufficient proof of the ordinary office procedure engaged in by the Sheriff's office with respect to the mailing of summonses as relates to the time of the purported mailing of the instant summons and complaint to defendant. Deputy Sheriff Clagett testified that he did not *know* the office practice in September of 1979 respecting pleadings (service of process by mail); that he did not handle the mailings from the office; that this was the responsibility of Ms. Burdett in September, 1979; that "there is another girl that does it in Ms. Burdett's place;" that he *guessed* the mailings were made in the ordinary course of business; that he did not *"believe"* his office uses the Pitney Bowes postage meter to post the postage, and that he *believes* "someone from the county picks the mail up, and they affix the postage to it" and that he can only "assume" the summons and complaint were mailed to the defendant. Neither Ms. Burdett nor her substitute testified as to the office practice respecting mailing of process.

The admission into evidence of plaintiffs' Exhibit 7, an envelope of the Sheriff's office addressed to defendant at his residence bearing a postmark September 14, 1979, with the legend "Out of Town, October 24", does not unequivocally demonstrate service by mail on defendant of the summons and complaint on this record. There is simply no testimony unequivocally showing the contents of such envelope when originally mailed, albeit an inference may be made that the envelope contained the summons and complaint. We need not resolve this dilemma, however, as the service is ineffective because of the failure to serve a person of suitable age and discretion, as aforesaid.

Accordingly, the order of the Supreme Court, Bronx County (MERCORELLA, J.), entered June 23, 1981, confirm-

ing the report of the special referee and denying defendant's motion to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 8) for lack of in personam jurisdiction, should be reversed, the plaintiffs' motion to confirm the referee's report should be denied, and the defendant's motion to dismiss the complaint should be granted.

CARRO and MARKEWICH, JJ., concur with BLOOM, J.; MURPHY, P. J., dissents in an opinion; LUPIANO, J., dissents in a separate opinion in which MURPHY, P. J., concurs.

Order, Supreme Court, Bronx County, entered on or about June 23, 1981, affirmed. Respondents shall recover of appellant $75 costs and disbursements of this appeal.