[No. B017439. Second Dist., Div. Seven. Dec. 17, 1986.]

WILLIAM ZIRBES, Plaintiff and Appellant, v.
SUSAN STRATTON, Defendant and Respondent.

1408

COUNSEL

Coskey, Coskey & Boxer, Hal L. Coskey and David G. Justl for Plaintiff and Appellant.

Hill, Wynne, Troop & Meisinger, Neil R. O'Hanlon and David Halberstadter for Defendant and Respondent.

OPINION

**JOHNSON, J.**—Appellant William Zirbes appeals an order setting aside a judgment for breach of a restaurant equipment lease against respondent Susan Stratton. The issue on appeal is whether the evidence is sufficient to show Mrs. Stratton was a party in the underlying action. We conclude the trial court lacked jurisdiction over Mrs. Stratton because there was ineffective service of process and appearance on her behalf was unauthorized. Accordingly, we affirm the order setting aside the judgment.

## I. STATEMENT OF FACTS AND PROCEEDINGS BELOW

Eugene and Susan Stratton were married in 1974. They began to experience marital problems in 1977 and subsequently separated. Mrs. Stratton filed a petition for marital dissolution in or about July 1979, the divorce becoming final in May 1982. On or about February 14, 1980, William Zirbes sued Eugene and Susan Stratton for breach of a restaurant equipment lease

for use in Stratton's Restaurant in Westwood Village. Philip K. Horrigan who was representing Eugene Stratton in his dissolution proceeding against Susan Stratton filed an answer on behalf of both Eugene and Susan Stratton. Judgment was entered in favor of Zirbes. Eugene Stratton appealed. Both Stratton and Zirbes stated in their appellate briefs in that case Susan Stratton had been relieved of the judgment. The court regarded Eugene Stratton as the sole defendant and appellant and affirmed the judgment against him.

In January 1985, Eugene Stratton filed a voluntary bankruptcy petition. Mrs. Stratton declared she discovered Zirbes had named her as a judgment debtor arising out of the above action in or about April 1985, when she received a telephone call from John R. Skoog. He identified himself as the lawyer for her former husband's new restaurant Stratton's Grill. Skoog informed her Zirbes did not know where to find her but "no doubt would be coming to Connecticut to levy upon [her] assets." In August 1985, Susan Stratton filed a motion pursuant to Code of Civil Procedure section 473 and the court's equitable power for relief from judgment on the ground Eugene Stratton's lawyer represented her without her knowledge and consent. The trial court set aside the judgment as to Susan Stratton.

Zirbes appealed. ■ An order granting a motion to vacate is appealable. (Code Civ. Proc., § 904.1, subd. (b); see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 108, p. 127).

## II. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN GRANTING SUSAN STRATTON RELIEF FROM JUDGMENT

Zirbes contends the trial court abused its discretion in granting relief because the evidence was insufficient to support its ruling. He claims the judge did not consider any extrinsic evidence dealing with the credibility of witnesses therefore the trial court decision was essentially a question of law. In sum, appellant asks us to review the evidence anew. He analogizes to the standard of review of cases involving the construction of a writing which allow for independent interpretation where no extrinsic evidence is introduced. Appellant's argument is meritless.

■ Section 473 (Code Civ. Proc.) allows a court to relieve a party from a judgment taken against him or her because of mistake, inadvertence, surprise or excusable neglect. It is settled "[t]he granting or denial of a motion to set aside an order or judgment under section 473 rests largely in the discretion of the trial court, and its decision will not be disturbed on appeal unless there has been a clear abuse of discretion. [Citations omitted.]" (*In re Marriage of Carter* (1971) 19 Cal.App.3d 479, 494 [97 Cal.Rptr.

274].) Appellate courts "are favorably disposed toward orders excusing defaults and permitting controversies to be adjudicated upon their merits. Such orders are rarely reversed and never unless it clearly appears that there has been a plain abuse of discretion. [Citations omitted.]" (*Outdoor Imports, Inc.* v. *Stanoff* (1970) 7 Cal.App.3d 518, 522 [86 Cal.Rptr. 593]). ■ Trial court discretion is limited by legal principles and subject to reversal where there is no reasonable basis for its action. (*Westside Community for Independent Living, Inc.* v. *Obledo* (1983) 33 Cal.3d 348, 355 [188 Cal.Rptr. 873, 657 P.2d 365].)

■ The primary issue before us is whether the evidence was sufficient to show Susan Stratton was a party in the underlying action. Contrary to appellant's contentions, "we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations omitted] and in support of the judgment [or order] [citation omitted]." (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].) This standard applies equally to oral or documentary evidence. (*Griffith Co.* v. *San Diego Col. for Women* (1955) 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349]). "When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed. [Citation omitted.]" (*Ibid.*) We conclude this rule applies also to declarations. (See generally Code Civ. Proc., § 2015.5.)

■ The record does not show an abuse of discretion. The trial court could reasonably have concluded on the basis of Mrs. Stratton's declarations she had not authorized Philip K. Horrigan to appear on her behalf in the underlying action initiated by Zirbes.[1] This case is unlike *Yarbrough* v. *Yarbrough* (1956) 144 Cal.App.2d 610 [301 P.2d 426] cited by appellant. In that case the court was found to have abused its discretion as a matter of law because the respondent was served with a summons and complaint

---

[1] ". . . I *never* authorized Horrigan to take any action on my behalf in connection with this action nor any other action, nor would I have done so had I known about the lawsuit or about Horrigan's supposed representation of me [Italics in original.]."

"12. Horrigan has been the Stratton family's lawyer for as long as I can remember. His loyalty is to Gene and Gene's father. *In fact, Horrigan was representing Gene in our marital dissolution action during the same period of time that Zirbes' lawsuit was pending!* He *never* mentioned his dual representation to me; he never asked for authority to represent me, either generally or in light of his adverse representation of Gene in our divorce. In fact, throughout the period of time during which the Zirbes [*sic*] litigation apparently proceeded, I never had any conversations about the litigation with Horrigan at all. I had been in his office on more than one occasion to discuss the dissolution action, but Zirbes' litigation was never mentioned. . . . [Italics in original.]"

and his affidavit did not disclose a sufficient excuse of inadvertence or neglect to permit the trial court to set aside a default. (*Id.*, at pp. 614-615.)

Neither is this case like *Hall* v. *Osell* (1951) 102 Cal.App.2d 849, 852-853 [228 P.2d 293], also cited by appellant, wherein the only evidence to support the judgment was the testimony of the defendant who alleged the airplane he crashed was in a faulty condition. Here the trial court must necessarily have determined Horrigan's appearance was unauthorized from Mrs. Stratton's declaration she would never have allowed the lawyer representing her husband in their divorce action to appear for her and Horrigan's declaration he answered for Mrs. Stratton on the authority of her husband.

Zirbes contends Horrigan appeared on Susan Stratton's behalf under an agency theory. He essentially argues Mrs. Stratton received notice of the answer through her lawyer and by her inaction ratified Horrigan's action. His tortured reasoning is along the following lines. Horrigan sent a letter dated February 13, 1981, on the husband's behalf to Elliott J. Dixon, Susan Stratton's dissolution lawyer. In it Horrigan stated among other things he had filed an answer on behalf of both the Strattons in the Zirbes' suit. Because Dixon acknowledged receipt of this letter in his response to Horrigan dated February 24, 1981, and because there was a notation that Mrs. Stratton received a carbon copy of Dixon's letter, Zirbes concludes Mrs. Stratton received notice through Dixon. Dixon's letter, however, only states: "I recognize further progress in your letter of February 13." Zirbes offers no explanation of how Mrs. Stratton would have been alerted to the contents of the February 13th letter. On this point the trial court stated: "You would think that letter would alert the lady's divorce lawyer when the husband's lawyer says he filed an answer for her in another lawsuit, but we don't have any evidence that the lady knew about that, and [Mrs. Stratton's] counsel points out you took the lady's deposition and haven't seen fit to provide it to me." We must necessarily conclude Mrs. Stratton did not receive notice from Dixon about filing the answer.

Second, Zirbes argues Mrs. Stratton must be found to have constructive notice of Horrigan's appearance through the doctrine of imputation: Dixon's knowledge of the answer must be imputed to Mrs. Stratton because he was her attorney in the dissolution proceeding. ▪ Even though the knowledge of a lawyer is knowledge of the client, the client "will ordinarily be charged with constructive notice only where the knowledge of the attorney has been gained in the course of the particular transaction in which he has been employed by that principal." (*Otis* v. *Zeiss* (1917) 175 Cal. 192, 195-196 [165 P. 524] [Citation omitted.]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) § 141, pp. 744-745.)

██ The court in *Rosenthal* v. *Garner* (1983) 142 Cal.App.3d 891, 895 [191 Cal.Rptr. 300] rejected "the notion that there is an identity of attorney and client so as to invariably impute to a client the attorney's inaction concerning his notice of new litigation to which the client is an unknowing party defendant." In that case the court addressed the question whether a lawyer's knowledge of a newly filed lawsuit arising out of previous litigation in which he had represented the client should be imputed to the client as actual notice under section 473.5 (Code Civ. Proc.). (*Id.,* at p. 893-894.) Plaintiffs mailed the defendant's attorney a copy of the summons and complaint and asked him to accept service if authorized. The lawyer communicated neither with the plaintiffs nor with the defendant. (*Id.,* at p. 894.) As in *Rosenthal* we do not discern so close a connection between Zirbes' suit and the dissolution proceeding to suggest Dixon's knowledge of the answer should be imputed to Mrs. Stratton. We agree with the trial court a reasonably competent lawyer would communicate such circumstances to his client, but there is no evidence Dixon did. We conclude the doctrine of imputation does not apply because the dissolution proceeding was an independent transaction from the Zirbes' suit.

██ Horrigan's appearance for Mrs. Stratton was unauthorized, thus the trial court was without jurisdiction to enter the judgment against her. (See *Raynum* v. *Wallace* (1938) 28 Cal.App.2d 136, 137-138 [82 P.2d 74]; 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 145, pp. 529-530.) In *Promotus Enterprises, Inc.* v. *Jiminez* (1971) 21 Cal.App.3d 560, 562, 567 [98 Cal.Rptr. 571] the court affirmed the trial court's judgment on the basis there was a lack of personal jurisdiction over the defendants who neither had been personally served nor had authorized the attorney to enter an appearance for them. It further concluded neither a partner nor an employee of this partnership had authority to retain an attorney to represent the defendants individually. (*Id.,* at pp. 563-566.)

██ Finally Zirbes argues Eugene Stratton had the duty and right to defend Mrs. Stratton in the action because he had agreed to hold her harmless for any liabilities arising from Stratton's Restaurant under the terms of their marital dissolution agreement. He further claims "[p]ursuant to Civ. Code § 2778 counsel for Mrs. Stratton was notified of the pendency of the action and of Mr. Stratton's intention to abide by his agreement to indemnify. There is no evidence that counsel for Mrs. Stratton objected to this procedure at any time." We find Zirbes' contention without merit.

Civil Code Section 2778, subdivision 4 plainly states "[t]he person indemnifying is bound, *on request of the person indemnified,* to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, *but the person indemnified has the right to conduct such*

*defenses, if he chooses to do so*;" [Italics added.]. The cases Zirbes cites on the duty and right of an indemnitor to defend an action brought against an indemnitee are not on point. He does not provide any cases which support the proposition an indemnitee has *no* right to notice of the action or right to conduct his or her own defense.

Moreover, Zirbes' contention there was no conflict of interest between Mr. Stratton and Mrs. Stratton over the Zirbes' suit is not substantiated by this record. The trial court considered the fact Susan Stratton had express indemnity rights against Eugene Stratton regarding the restaurant. It noted at the very least Horrigan should have filed a cross-complaint for indemnity against Mr. Stratton on her behalf. ■ "When two clients have diverging interests, counsel must disclose all facts and circumstances to both clients to enable them to make intelligent decisions regarding continuing representation [Citation omitted]." (*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 374 [208 Cal.Rptr. 494, 50 A.L.R.4th 913].) In addition, Horrigan was obligated to obtain written consent from both parties upon representing them in the action because of their conflicting interests. (Rules Prof. Conduct, rule 5-102 (B).)

### III. The Evidence Is Sufficient to Show Ineffective Service of Process

■ Zirbes contends *Fitzgerald* v. *Fernandez* (1886) 71 Cal. 504, 508-509 [12 P. 562] applies to the instant case. That court concluded the unauthorized appearance of an attorney retained by plaintiff's husband without her knowledge or consent was of no consequence because she would have been entitled to a default judgment. (*Id.,* at p. 509; see 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 146, pp. 530-531.) *Fitzgerald* is distinguishable from the instant case because in it both the husband and wife had been served with process. (*Id.,* at pp. 508-509.) At trial and on appeal the respondent contended there was ineffective service of process as to her. We agree.

Zirbes contends Mrs. Stratton was properly served with process because substituted service pursuant to section 415.20, subdivision (b) (Code Civ. Proc.) was made to her parent's address at 12221 Falkirk Lane, Los Angeles, and Stratton's Restaurant. He claims "[i]t seems beyond all bounds of reason that Susan Stratton's parents would not have informed her of the receipt of summons and complaint." Mrs. Stratton states in her declaration she was not personally served and did not receive the summons or complaint because she neither resided at her mother's residence nor received mail there. She claims she was living at her legal address, 1037 Iliff Street, Pacific Palisades,

where she had filed her petition for marital dissolution more than six months earlier.[2]

Substituted service by abode service is a secondary method of service on natural persons. (*Evartt* v. *Superior Court* (1979) 89 Cal.App.3d 795, 799 [152 Cal.Rptr. 836].) ■ "In order to obtain in personam jurisdiction through any form of constructive service there must be strict compliance with the requisite statutory procedures. [Fn. omitted.]" (*Stamps* v. *Superior Court* (1971) 14 Cal.App.3d 108, 110 [92 Cal.Rptr. 151].) To be constitutionally sound the form of substituted service must be "reasonably calculated to give an interested party actual notice of the proceedings and an opportunity to be heard . . . [in order that] the traditional notions of fair play and substantial justice implicit in due process are satisfied." (*M. Lowenstein & Sons, Inc.* v. *Superior Court* (1978) 80 Cal.App.3d 762, 768 [145 Cal.Rptr. 814] (disapproved on another ground in *Johnson & Johnson* v. *Superior Court* (1985) 38 Cal.3d 243, 254-255 & fn. 7); *Shoei Kako Co.* v. *Superior Court* (1973) 33 Cal.App.3d 808, 818 [109 Cal.Rptr. 402].)

■ Section 415.20, subdivision (b) allows a process server to leave the summons and complaint at the "dwelling house" or "usual place or abode" of the person being served. Zirbes contends it was appropriate to serve process at 12221 Falkirk Lane, Los Angeles, because this address was used on Mrs. Stratton's last driver's license. Mrs. Stratton states in her declaration she used her mother's address in August 1981, in order to renew her driver's license before moving to Connecticut. She also states she used her mother's address more than one-and-a-half years after Zirbes's attempted service there.

We do not think service of process at a parent's residence was reasonably calculated to give Mrs. Stratton notice. The Comment of the Judicial Council states "[t]he terms 'dwelling house' and 'usual place of abode' take their meaning from the Federal Rules." (Com. foll. § 415.20, Deering's Ann. Code Civ. Proc. (1972 ed.) p. 752; see also *Substituted Service of Process on Individuals: Code of Civil Procedure Section 415.20(b)* (1969-70) 21 Hastings L.J. 1257, 1260-1266.) Keeping in mind statutes dealing with constructive service under the California rule must be strictly construed (*Evartt* v. *Superior Court, supra,* 89 Cal.App.3d 795, 799-800), we turn to *Rovinski* v. *Rowe* (6th Cir. 1942) 131 F.2d 687. In that case the summons

---

[2]Section 415.20 (Code Civ. Proc.), authorizing substituted service of process (see Judicial Council of Cal., com. foll. § 415.20, Deering's Ann. Code Civ. Proc. (1972 ed.) p. 752), states in pertinent part in subdivision (b): ". . . a summons may be served by leaving a copy of the summons and of the complaint at such person's dwelling house, usual place of abode, or usual place of business in the presence of a competent member of the household or a person apparently in charge of his office or place of business, . . ."

and complaint were left with appellant's mother. (*Id.*, at p. 688.) The trial court denied his motion to dismiss for lack of jurisdiction because of ineffective service under rule 4(d)(1) of the Federal Rules of Civil Procedure. (*Ibid.*) It reasoned the service of process was good because appellant testified at trial "he had always considered and held out" his mother's address as his home, he maintained a personal telephone and kept some belongings there, a room was always waiting for him there, and finally he was unmarried and maintained no other household. (*Id.*, at p. 689.) The Sixth Circuit affirmed on the basis rule 4(d)(1) should be construed liberally. (*Ibid.*)

In contrast, Mrs. Stratton was a married mother of two children. She had established a separate legal household where she resided with her children which was a matter of public record. We think due process requires more than the supposition a parent or other relative will necessarily tell the target of service. We find support in *Thoenes* v. *Tatro* (1974) 270 Ore. 775 [529 P.2d 912]. Defendant was served by substituted service upon his mother at his family home. (*Id.*, at p. 914.) His parents did not inform him but rather forwarded the papers to the insurance company. The Supreme Court of Oregon noted the record did not reveal when or how defendant became aware of the action. Defendant's motion to quash return of service and vacate the judgment was denied. (*Ibid.*) The defendant claimed his parents' home was not his abode for purposes of service because he was living in another state attending college. (*Id.*, at p. 917.) The court agreed. It found the plaintiff's contentions defendant used his parents' address as his own on his Oregon driver's license and on his automobile registration among other evidence as unpersuasive because it equated "'usual place of abode'" with domicile. (*Id.*, at pp. 917-918.) It stated "the question of what constitutes defendant's 'usual place of abode' is not one of abstract definition, but must be answered with the notice requirements of due process clearly in mind." (*Id.*, at p. 918.)

Similarly, we find no merit in the contention service of process was effective by leaving the summons and complaint at Stratton's Restaurant with Eugene Stratton, her estranged husband. Mrs. Stratton stated in her declaration she was not working at Stratton's Restaurant and had not been employed there since 1976. Although Mrs. Stratton had a community interest in Stratton's Restaurant, we do not think under these circumstances this makes a strong enough connection for effective service. At trial the court stated: ". . . there was a terrible lack of due process here, and the test on due process is largely a smell test, anyway, and the law would be an ass if it allowed this judgment to stand without the lady having her day in court." In this case especially, we agree.

## DISPOSITION

The judgment is affirmed. Respondent to receive her costs on appeal.

Lillie, P. J., and Thompson, J., concurred.