[No. B067754. Second Dist., Div. Four. Apr. 21, 1994.]

RICHARD B. CORCORAN, Plaintiff and Respondent, v.
ALBERT AROUH et al., Defendants and Appellants.

**COUNSEL**

Gary Brown for Defendants and Appellants.

Alfred M. Cedro for Plaintiff and Respondent.

**OPINION**

**HASTINGS, J.**—Appellant, Cyrus Mayers (Mayers), appeals from a denial of a motion to vacate judgment and quash writ. Appellants, Cyrus Mayers and Albert Arouh (Arouh), both appeal from an award of sanctions granted after the trial court denied the motion to vacate. We find that the trial court lacked jurisdiction over Mayers and that counsel's appearance on his behalf in the suit was unauthorized. We also find that sanctions were improperly ordered against both appellants. We therefore reverse the ruling of the trial court with regard to appellants.

FACTS

On March 25, 1990, Attorney Alfred M. Cedro (Cedro), on behalf of Richard B. Corcoran (respondent), filed a lawsuit for fraud, breach of contract and common counts against defendants Dick Capen (Capen), Albert Arouh, individually and doing business as A.C. Home Loans, and doing business as Gold Coast Home Loan, Inc.; Cypress Mayers;[1] and Does 1 to 50. The suit sought damages for a loan allegedly made to defendants for investment in a second trust deed.

On June 28, 1991, a "Stipulation for Entry of Judgment—Judgment Payable in Installments" was filed with the court. This document was signed by Cedro on behalf of respondent, by Attorney Jeff A. Mann (Mann) purporting to represent all defendants including Mayers, by respondent, by Capen, by Arouh, and purportedly by Cypress Mayers. The judgment was for the sum of $31,480 to be paid in installments unless there was a payment

---

[1]The complaint and all legal documents filed in the case refer to Cypress Mayers. This includes documents prepared by Mayers's supposed counsel as well. Mayers advises that his true name is Cyrus Mayers.

due more than five days late, and then the entire amount would become due. On June 28, 1991, a judgment was entered based upon the stipulation.

Respondent apparently attempted to collect on the judgment against Mayers and on December 26, 1991, Mayers caused to be filed a "Notice and Motion to Vacate Judgment and Quash Writ," alleging that he had no knowledge of the judgment, that he was never served with process, and that he never gave authority to Mann to represent him or make an appearance on his behalf. The motion was supported by a declaration from Mayers which stated as follows: "2. On November 20, 1991, for the first time, I became aware of the existence of a lawsuit brought by Richard Corcoran naming me as a defendant. I was shown a copy of a document entitled 'Stipulation for Entry of Judgment—Judgment Payable in Installments' which is attached as Exhibit 'A' to this declaration. I had never seen that document before, never knew of the existence of that document before, never signed that document and never authorized anyone to sign on my behalf. I was utterly shocked and surprised to learn not only of the existence of the lawsuit, but also . . . of the existence of a judgment purporting to be against me. [¶] 3. I have never met Jeff A. Mann, Esq., have never spoken with him, have never authorized anyone to retain him on my behalf, and until shown the document attached as Exhibit 'A', never knew he purported to represent me. [¶] . . . . [¶] 6. I have never been served with the summons and complaint in this matter."

The motion was opposed by respondent on the grounds: (1) proper substituted service had been obtained on Mayers by service on Capen; and (2) that respondent relied upon the ostensible authority of Mann to act on behalf of Mayers. In connection with the opposition, Cedro attached his own declaration which stated, in part: "2. On or about June 26, 1990, I caused the Complaint to be served on Defendant MAYERS. Said service was by substituted service upon co-defendant DICK CAPEN.[2] [¶] 3. Subsequent to such service I received an answer to the Complaint filed by attorney JEFF A. MANN. Said Answer was filed on behalf of ALL DEFENDANTS. [¶] 4. At no time did Mr. MANN state or indicate in any way that he did not represent Defendant Mayers. In fact, all pleading[s] on file herein will indicate that Mr. MANN expressly represented Defendant Mayers. [¶] 5. It should also be noted that the three individual defendants are Officers of Defendants Corporation GOLD COAST HOME LOAN, INC. and that their attorney JEFF A. MANN IS A DIRECTOR OF SAID CORPORATION. A copy of the Statement by Domestic Stock Corporation filed with the Secretary of State is attached hereto as

---

[2] Attached as exhibit A to his declaration is a proof of service for "CYPRESS MAYERS" indicating delivery on "DICK CAPEN . . . 5451 LAUREL CANYON BLVD., NORTH HOLLYWOOD, CA 91607." This document is not referenced in his declaration but it is apparently proof of the substituted service relied upon by respondent.

Exhibit 'B' and incorporated by reference herein. [¶] 6. It is clear that all of the defendants are intimately involved in a business together and in fact were involved with their prior counsel in business. It is therefore nonsensical to believe that somehow ONE of these defendants had no knowledge of the events and existence of this suit, the Judgment, etc. [¶] 7. At no time did Defendants' Counsel, Jeff A. Mann, ever contend that no service was made on Defendant Mayers, nor was it represented that Mr. Mann only represented Defendants Capen and Arouh."

Ultimately, the matter was heard and testimony was taken regarding the authority of Mann to act on behalf of Mayers.[3] Mann testified that he spoke with and relied upon instructions given to him by Arouh and it was his understanding that he was representing Mayers; that he prepared and sent the stipulation to Arouh for signatures; that when he received it back he *assumed* Mayers had signed it but that he had not seen him sign it. Mayers testified that he did not sign the document. He further stated that "I am not a principal, or have any vested interest in that company. And I never signed any checks. I was just a hired employee." Arouh testified that Mayers did not sign the document but that he, Arouh, signed the stipulation on behalf of Mayers and that he, Arouh, *assumed* he had authority to sign on behalf of Mayers because "Mr. Mayers is the broker for my company, and we have a longstanding business relationship. . . . [¶] It was *my understanding* that we had an agreement that I could." (Italics added.) On cross-examination by Mayers, Mann stated that he knew Mayers was "just acting as a broker for Mr. Arouh."

At the end of the hearing the court denied the motion stating: "The stipulated judgment is going to stand. I am not going to void it, and I am not going to set it aside. [¶] There is at least ostensible agency for anything that was done against Mr. Mayers. He is involved to the same extent of it." The court then issued sanctions against defendants, including Mayers, with the following statement: "The Court is shocked at some of the conduct that has gone on. I have had to Mirandize to make sure that people weren't ultimately telling me a fib, for want of a better word. [¶] I reserve [*sic*] sanctions on all counsel, including the plaintiff's counsel, for some time. [¶] You are going to pay $500 personally, sanctions to Mr. Corcoran and his attorney. And the other two will each pay $500. That's it." The minute order reflects the

---

[3]The matter was continued a number of times and finally heard on April 28, 1992. The court was concerned regarding perjury and apparently advised all parties of their Fifth Amendment right not to testify. Also, counsel for Mayers, Gary Brown, had called the court to indicate that he would be late, approximately 2 p.m., instead of 1:30. At the appointed hour Mr. Brown was still not present so the court proceeded without him and took testimony from Mayers, Mann and Arouh. Brown apparently arrived at approximately 2:11 but the court concluded the matter without allowing him to participate.

following regarding sanctions: "Mr. Mann, Mr. Arouh, and Mr. Mayers each are ordered to pay the sum of $500 to plaintiff and his counsel as and for sanctions."

This appeal was timely filed.

## DISCUSSION

### A. *The question of service:*

■ Respondent contends that he obtained valid substituted service over Mayers. Attached to his opposition was the proof of service indicating service by delivery to Dick Capen at 5451 Laurel Canyon Boulevard, North Hollywood, California. (See fn. 1, *ante.*) However, also attached to the opposition as exhibit "B" was the statement of Domestic Stock Corporation for Gold Coast Home Loan indicating "Secretary Cyrus S. Mayers, 928 N. San Vicente, Los Angeles, CA 90069." None of the addresses in the statement match the address for Laurel Canyon Boulevard. There is no indication in the record that Mayers had any connection with that address.

It is crucial that a connection be shown between the address at which substituted service is effectuated and the party alleged to be served. (*Zirbes v. Stratton* (1986) 187 Cal.App.3d 1407, 1416-1417 [232 Cal.Rptr. 653].) There is no indication in the record to tie in Mayers to the address where he was allegedly served. The statement of Domestic Stock Corporation does not identify Capen as being connected with Gold Coast Home Loan, Inc., and the Laurel Canyon address is not identified on this form. Even assuming that Capen is a business colleague of Mayers, there is no indication that service on Capen would give notice to Mayers. (*Zirbes v. Stratton, supra,* 187 Cal.App.3d 1407.) We find that the alleged substituted service was ineffective to give notice to Mayers.

### B. *Authorization of Mann to act on behalf of appellant:*

■ The evidence is uncontradicted that Mann had no express or actual authority from Mayers to make an appearance on behalf of him. He "understood" from Arouh that he was to appear for all defendants. Arouh felt that because he had a longstanding relationship with Mayers and because Mayers was the broker for his business that he could bind Mayers. There is no evidence in the record that Mayers was involved in the particular transaction giving rise to the suit. There is no evidence in the record that anyone ever spoke with Mayers about the suit. In fact, the uncontradicted evidence is that Mayers was not aware of the suit. Therefore, the only evidence that exists to

support the court's finding of ostensible agency is the fact that Mann made an appearance on behalf of Mayers and Arouh's conclusion that he felt he could act to bind Mayers. As a matter of law, this evidence does not support the court's finding of ostensible agency to bind Mayers.

It is true that, absent evidence of lack of authority, an ostensible agency may be found to exist when counsel makes an appearance for and purports to act on behalf of a litigant. (*Phelps* v. *Kozakar* (1983) 146 Cal.App.3d 1078, 1082-1083 [194 Cal.Rptr. 872].) However, contrary to the showing in *Phelps*, *supra*, Mayers did present to the court uncontradicted evidence directly disputing any authority of Mann to act on his behalf in this case. Also, Arouh's belief that he had authority to act on behalf of Mayers was insufficient to confer authority to retain Mann to act on behalf of Mayers individually. (*Zirbes* v. *Stratton*, *supra*, 187 Cal.App.3d at p. 1414, citing *Promotus Enterprises, Inc.* v. *Jiminez* (1971) 21 Cal.App.3d 560, 565-566 [98 Cal.Rptr. 571].)

### C.   *The sanctions:*

■   The trial court made no mention of the legal authority upon which sanctions were based. The proceeding before the court did not relate to discovery, and the order was not in favor of the county; therefore, we conclude that the court purported to act based upon California Code of Civil Procedure section 128.5 as compared to the Discovery Act or Code of Civil Procedure section 177.5.

Code of Civil Procedure section 128.5, subdivision (c) requires that "[a]n order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order." In that regard, the court's minute order states: "Mr. Mann, Mr. Arouh, and Mr. Mayers each are ordered to pay the sum of $500 to plaintiff and his counsel as and for sanctions." The minute order fails to recite the conduct or circumstances justifying sanctions. Therefore it is defective. Reference to the reporter's transcript is not helpful. It merely states a conclusion: "The Court is shocked at some of the conduct that has gone on. I have had to Mirandize to make sure that people weren't ultimately telling me a fib, for want of a better word." The court fails to delineate the conduct with specificity and we can only conclude that the court was referring to the subject matter of the motion. We have found that the motion was well taken. Certainly, as to Mayers, the sanctions cannot stand.

The evidence reflects that Arouh felt that he had authority to act on behalf of Mayers. He so advised Mann. Mann acted on the authority given to him by Arouh. While it may have been more appropriate to obtain some indicia

from Mayers that Arouh was authorized to speak for Mayers, we cannot find that either Arouh or Mann acted frivolously or in bad faith as those terms are used in Code of Civil Procedure section 128.5. We find that the record reflects no conduct which justifies sanctions.

## DISPOSITION

The order of the trial court denying Mayers's motion to vacate the judgment and to quash the writ and granting sanctions against Mayers and Arouh is reversed. The matter is remanded to the trial court with orders to enter a new order granting the motion vacating the judgment as to Mayers only, and vacating the order relating to sanctions as to Mayers and Arouh. Costs are awarded to appellants.

Woods (A. M.), P. J., and Klein (Brett), J.,* concurred.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.