**HOWARD JOHNSON INTERNATIONAL, INC., formerly known as Howard Johnson Franchise System, Inc., Plaintiff,**

v.

**George WANG, Defendant.**

**No. 96 Civ. 6455(DC).**

United States District Court, S.D. New York.

May 20, 1998.

---

Pitney, Hardin, Kipp & Szuch by John E. Page, New York City, for Plaintiff.

Solomon and Weinberg, L.L.P. by Cory Mitchell Gray, New York City, for defendant.

## MEMORANDUM DECISION

CHIN, District Judge.

Defendant George Wang moves to vacate a default judgment entered against him on No-vember 27, 1996 for failure to answer or move within the time permitted. Wang argues that he was not properly served pursuant to Fed.R.Civ.P. 4(e). Accordingly, he insists that the judgment is void and must be set aside. *See* Fed.R.Civ.P. 60(b)(4). In addition, he seeks dismissal of the complaint on the ground that proper proof of service was not filed with the Clerk of the Court within 120 days of the filing of this action.

For the reasons that follow, I hold that Wang was properly served. Defendant's motion to vacate the judgment and dismiss the complaint is therefore denied.

## THE FACTS

This is a Lanham Act case arising from a licensing agreement between Howard Johnson International, Inc., and Wang, which permitted the latter to use the Howard Johnson trademarks subject to certain contractual conditions. Wang used the Howard Johnson trademarks and tradenames in connection with a guest lodging facility located at 7400 N.W. Eighth Avenue, Gainesville, Florida. Howard Johnson sued Wang, alleging that he violated the Lanham Act and the agreement by failing to cure quality assurance breaches and financial defaults, and that even after the contract had been terminated by Howard Johnson, Wang continued to use Howard Johnson's marks without authorization.

On August 23, 1996, this Court ordered Wang to show cause why a preliminary injunction should not be entered against him. Plaintiff was required to personally serve copies of the order and complaint on Wang within seven days and by overnight courier service by August 26, 1998.

On August 26, 1998, plaintiff's counsel sent by Federal Express a copy of the complaint and order to show to cause to Wang at 7516 Newberry Road, Gainesville, Florida, the address for Wang as set forth in the licensing agreement.

Herbert R. Hildreth, the process server hired by plaintiff, states under oath that he attempted to serve Wang personally three separate times on August 26 and 28 of 1996 at the Day's Inn Hotel, located at the 7516 Newberry Road address. (*See* Pl.Ex. A).

Hildreth states that on his first visit to the hotel on August 26, he was informed by the desk clerk that Wang was the owner of the hotel, maintained a residence there, "as well as at other hotel properties he owned," and was not present but might turn up later. (Hildreth Aff. ¶ 4).

Hildreth further states that on his second visit to the hotel on the morning of August 28, he spoke to John Osley, who "identified himself as the General Manager of the Days Inn hotel and Mr. Wang's other properties." (Hildreth Aff. ¶ 5). According to Hildreth, Osley told him that Wang was the owner of the Day's Inn and maintained a residence "at this hotel as well as at other hotel properties he owned." (Hildreth Aff. ¶¶ 4, 7). Osley also allegedly told Hildreth that Wang would be coming to the hotel from one of his other properties later that day.

When Wang failed to show up at the property on Hildreth's third attempt at personal service that same afternoon, Hildreth served the complaint and summons on Osley, who, according to Hildreth, stated that "he could accept service of the papers." (Hildreth Aff. ¶ 6). Osley signed the papers as "general manager of Days Inn."[1]

Osley's account of this encounter differs somewhat from Hildreth's. In a terse, single-page affidavit, Osley explicitly denies informing Hildreth that Wang maintained a residence at the Day's Inn or that he would accept papers on behalf of Wang personally. Indeed, he states in his affidavit that he "had no authority to accept service for any other entity other than the Days Inn Hotel." (Osley Aff. ¶ 5). Nevertheless, he acknowledges that he signed for the documents. It is unclear what Osley did with the complaint and summons after accepting them from Hildreth; he does not say.

John E. Page, Esq., counsel for plaintiff, states under oath that on or about September 4, 1996, he received a telephone call from Osley, who purportedly identified himself as manager of Wang's properties. According to Page, during this conversation Osley con-

firmed that the summons and complaint had been received, but that neither Osley "nor Wang understood what the lawsuit was about since the hotel had ceased using any of HJI's trade names and trademarks in connection with the operation of guest lodging facility at 7400 NW Eighth Avenue and was either scheduled to be or had been demolished." (Page Aff. ¶ 8).

Wang failed to respond to plaintiff's application for a preliminary injunction and never answered the complaint. The preliminary injunction was denied as moot on September 20, 1996. On November 8, 1996, after defendant's time to answer or move had expired, plaintiff moved for a default judgment. The motion was granted on November 27, 1996, and judgment was entered against Wang in the amount of $194,777.09.

By letter dated October 3, 1997, defendant sought a premotion conference to move to vacate the default judgment for defective service of process, and negotiations between the parties began in earnest in an effort to avoid unnecessary motion practice.

After the parties failed to resolve this matter through settlement, Wang filed the instant motion to vacate. In his sworn affidavit, Wang claims that he had no knowledge of this action or that a default judgment had been entered against him until plaintiff attempted to seize his assets on September 17, 1997. He states that he "currently reside[s] and resided at the time the Complaint was filed ... at 7904 N.W. 170th Street, Alachua, Florida." (Wang Aff. ¶ 6). He denies ever representing that the Howard Johnson Hotel at 7400 Northwest 5th Avenue is his dwelling place, usual place of abode, or actual place of business, but, strangely, makes no mention of the Day's Inn at 7516 Newberry Road whatsoever. He also suggests that in an unrelated action by plaintiff, service was proper as to him at yet a third address: the Day's Inn Hotel at 2820 N.W. 13th Street, Gainesville, Florida, 32609. (Wang Aff. ¶ 6).

1. Wang's own affidavit contains an apparent discrepancy: he notes that service was purportedly effected on the Howard Johnson Hotel, which is the subject of the lawsuit, located at 7400 North-

west 8th Avenue, Gainesville, Florida, 32605. But, as Hildreth's and Osley's affidavits and the proof of service show, service actually was effected at the Day's Inn Hotel.

## DISCUSSION

### A. *Legal Standards*

 A judgment obtained by way of defective service is void *ab initio* and must be set aside as a matter of law. Plaintiff has the burden of demonstrating that service was proper. An affidavit of service, however, constitutes *prima facie* evidence of effective service. *See Remington Invs., Inc. v. Seiden*, 240 A.D.2d 647, 658 N.Y.S.2d 696, 697 (2d Dep't 1997). Under Fed.R.Civ.P. 4(e)(2), one permissible method of substitute service is to leave "copies of [the legal papers] at the individual's dwelling house or usual place of abode with some person of suitable age and discretion residing therein."

New York law largely tracks Rule 4(e), but also permits substitute service at an individual's actual place of business. The relevant provision, however, requires a two-step process: first, the summons must be delivered to "a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served"; second, an additional summons must be either mailed to the person to be served "at his or her last known residence" or mailed to the person's "actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served." N.Y.C.P.L.R. § 308(2).

 In addition, the Second Circuit has indicated its preference that "litigation disputes be resolved on the merits, not by default." *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir.1995). Accordingly, when considering a motion to vacate a default judgment, a court often considers (1) whether the default was wilful; (2) whether the defendant has a meritorious defense; and (3) whether the non-defaulting party has been prejudiced. Any doubts as to whether a default should be set aside should be resolved in favor of the defaulting party. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir.1993) ("[U]nder the caselaw all doubts must be resolved in favor of trial on the merits."); *Kumar v. Ford*, 111 F.R.D. 34, 38 (S.D.N.Y.1986) (same).

### B. *Application*

 The primary question before me is whether substitute service on Osley is legally sufficient as to bind Wang. I hold that service on Osley was proper under Fed.R.Civ.P. 4(e)(2) and New York law.[2]

First, plaintiff complied with the dictates of Rule 4(e)(2) by "leaving copies [of the documents] at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein."

There is more than sufficient evidence in the record to demonstrate that Wang maintained a "dwelling house or usual place of abode" at the Day's Inn at the time the complaint was served on Osley: (1) the licensing agreement provides that Wang's address is 7516 Newberry Road; (2) the 1996 and 1997 phonebooks, on which plaintiff apparently relied in part, lists Wang's home address as that of the Day's Inn Hotel at 7516 Newberry Road; (3) according to Hildreth, two of Wang's employees acknowledged that Wang maintained a residence at the Day's Inn, although Osley now denies saying that Wang had a residence there;[3]

---

2. Because I find that plaintiff's method of service complies with the Federal Rules of Civil Procedure and New York law, I need not address whether it satisfies the requirements of Florida law.

3. Although Osley now denies making such statements to Hildreth, a hearing is not required to resolve this single issue. First, neither side requested a hearing. Second, a hearing is unnecessary because, even assuming I were to credit Osley's denial, which I do not, there is still considerable evidence indicating that Wang main-

tained at least a dwelling place at the Day's Inn. In addition to the public listings of Wang's address at the Day's Inn and Wang's use of the hotel's address for his mailing address, Hildreth's unrebutted testimony is that at least one of Wang's employees confirmed that Wang kept a residence at the hotel. The person at the desk on August 26, 1998, who, according to Hildreth, told him that Wang kept a residence there and at other hotels, could easily have submitted an affidavit denying that he made such statements to Hildreth, but has not done so.

and (4) Wang does not deny that the Day's Inn was his usual place of abode or a dwelling place.

In light of this abundant circumstantial evidence and Wang's own limited denials, I find that the Day's Inn was one of Wang's dwelling places or his usual place of abode at the time the complaint was served. This is true irrespective of the fact that Wang may have maintained a residence at another location. *See National Dev. Co. v. Triad Holding Corp.,* 930 F.2d 253 (2d Cir.) (noting that courts have sustained service at hotel as dwelling place where defendant maintains more than one residence or dwelling place), *cert. denied,* 502 U.S. 968, 112 S.Ct. 440, 116 L.Ed.2d 459 (1991); *Karlin v. Avis,* 326 F.Supp. 1325, 1330 (E.D.N.Y.1971) (service on apartment was proper as one of defendant's many dwelling places) Hence, service on Osley, a person of suitable age and discretion at that site,[4] satisfies Rule 4(e)(2). Although Osley does not appear to actually live at the Day's Inn, this is a minor point that courts have found not to be fatal where a service has been accomplished on the doorman or manager of a hotel. *See, e.g., 131 Main Street Assocs. v. Manko,* 897 F.Supp. 1507, 1525 (S.D.N.Y.1995).

Second, plaintiff complied with the provisions of N.Y.C.P.L.R. § 308(2) permitting substitute service by (1) delivering the complaint and summons to Osley at the Day's Inn, which served as Wang's actual place of business and his dwelling place or usual place of abode, and (2) mailing a copy of the documents to Wang's last known address, which happened to be the same location. *See Karlin v. Avis,* 326 F.Supp. at 1329 ("In a highly mobile society it is unrealistic to interpret CPLR § 308(2) as mandating service at only one location where, in fact, a defendant maintains several dwelling places."). Plaintiff complied with the first prong of § 308(2) by serving the documents on Osley, and complied with the second prong by mailing (by overnight courier) the same documents to Wang at the Day's Inn, the address of Wang's "last known residence."[5]

I conclude that the Day's Inn served as Wang's dwelling place or usual place of abode under New York law for the same reasons set forth above. Additionally, the following demonstrates that the Day's Inn also served as an actual place of business for Wang: (1) the licensing agreement bears the hotel's address, suggesting that his contact with the premises was frequent enough to use it as a business address; (2) Hildreth's uncontradicted statement is that he was told by two different people on different days that Wang would be returning to the hotel soon; (3) Wang fails to explain why he had documents related to the agreement sent to the Day's Inn if he did not conduct business there, and does not state that the Alachua address is his sole place of business; and (4) Wang appears to conduct business out of many different addresses.

Although Wang states in conclusory fashion that plaintiff was aware of his alternative address in Alachua, he does not provide evidence indicating that he consistently held that address out as his residence and sole place of actual business, or that plaintiff would have had any reason to believe that were the case. Wang himself is guilty of sowing confusion through his use of several different addresses for various purposes. Indeed, in his affidavit he implicitly concedes that he often uses the same address for both

---

4. As the manager of the hotel, Osley was a person of suitable age and discretion because "hotel managers and landladies normally are under an obligation to transmit all incoming messages and mail to guests and tenants, [and] there appears to be no valid objection to permitting delivery to such persons, at least in terms of questioning the likelihood of notice or fairness to [a] defendant." *131. Main Street Assocs. v. Manko,* 897 F.Supp. 1507, 1525 (S.D.N.Y.1995) (quoting 4A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure.* § 1096, at 82 (2d ed.1987)). This *is* especially true here, where there is evidence suggesting that the manager had a broader relationship with the defendant by acting as his agent in communicating with lawyers and perhaps even managing some of defendant's other properties.

5. That the envelope did not bear the legend "personal and confidential" is irrelevant, as plaintiff relied on the first (of two) options required by the second step, that is, mailing the documents to Wang's last known residence. *See* N.Y.C.P.L.R. 308, practice commentaries, at 306 (McKinney 1990) ("If the mailing is to the last known residence of the defendant, then there are no particular requirements as to the form of mailing.").

a residence and place of business. These addresses, and their multiple uses, appear to shift at Wang's convenience without explanation or notice.

■ In short, I conclude that Wang was properly served. The remaining question is whether equity nevertheless demands vacatur. Under the circumstances, I find that it does not.

To begin, Wang received actual notice of the complaint and wilfully ignored the lawsuit. I credit the sworn statements of Page, the substance of which are uncontroverted, that Osley, apparently acting as Wang's agent, acknowledged his and Wang's awareness of the suit. It is also curious that Osley does not mention what he did with the documents after he accepted them; and neither Wang nor Osley deny under oath that they discussed the lawsuit. Indeed, Osley, who clearly was aware of the pending action, does not even suggest that he did not inform his employer of the papers he knowingly accepted; his failure even to offer an explanation for this seeming lapse is telling. It appears that Wang simply decided not to defend the lawsuit, either because he felt he had no meritorious defense or that the action was moot because the hotel at the center of the dispute had been or was soon to be destroyed. That Wang wilfully failed to defend this action weighs heavily against disturbing the judgment. *See National Dev. Co.,* 131 F.R.D. at 412 (Rule 4 "should be broadly construed where the defendant, as in this case, received notice of suit.") (quoting with approval *Nowell v. Nowell,* 384 F.2d 951, 953 (5th Cir.1967), *cert. denied,* 390 U.S. 956, 88 S.Ct. 1053, 19 L.Ed.2d 1150 (1968)); *Jeri–Jo Knitwear, Inc. v. E.S. Sutton, Inc.,* No. 94 Civ. 8551, 1995 WL 714367, *2 (S.D.N.Y. Dec.1, 1995) (denying motion to vacate default where defendant had notice of suit "but simply did not respond").

Further militating against vacatur is that Wang makes no attempt to articulate a meritorious defense to the lawsuit that he would raise in the event the motion were granted. *See id.,* 1995 WL 714367 at *2. Nowhere in defendant's moving papers does he suggest that he did not violate the Lanham Act or breach the licensing agreement.

Finally, with respect to the potential prejudice involved, Wang certainly faces some hardship if the judgment is permitted to stand. It is a significant monetary judgment. The interests of finality and fairness, however, weigh against reopening the judgment, particularly here, where defendant had effective, actual notice of the lawsuit but merely chose not to defend the suit without offering any credible explanation. After nearly two full years of litigation, plaintiff is entitled to some measure of finality.

### CONCLUSION

Defendant's motion is denied.