The REYNOLDS CORPORATION, d/b/a
The Reynolds Group, d/b/a Reynolds
Corporate, Inc., Plaintiff,

v.

NATIONAL OPERATOR SERVICES,
INC., et al., Defendants.

No. 98–CV–6308L.

United States District Court,
W.D. New York.

May 30, 2002.

T. Andrew Brown, Brown and Hutchinson, Rochester, NY, Stephen Sale, Claxton, Sale & Quinn, P.C., Washington, DC, for plaintiff.

Daniel J. Moore, Harrison Beach LLP, Pittsford, NY, Stephen B. Mercer, Rene Sandler, Sandler & Mercer, P.C., Rockville, MD, David Rothenberg, Geiger and Rothenberg, LLP, Rochester, NY, Jeffrey M. Schwaber, Stein Sperling Bennett De Jong, Driscoll & Greenfeig, P.C., for defendants.

*DECISION AND ORDER*

LARIMER, Chief Judge.

Plaintiff, the Reynolds Corporation, commenced this breach of contract and tort action against a broker of long distance services and the provider of those services, Operator Communications ("Operator"). Defendants Ronald and Cindy Haan ("the Haans"), described in the complaint as directors of Operator, are also named defendants. They have moved to quash service of process pursuant to Fed.R.Civ.P. 12(b)(5). For the following reasons, the Haans' motion is denied.

## BACKGROUND

When the Haans' motion was originally submitted, the Court determined that certain factual issues could not be resolved based on the existing record, and the Court scheduled a factual hearing. *See* Docket No. 58. On the date of the hearing, neither side provided any witnesses. The parties submitted additional evidence, including the videotaped deposition of the process server, Mark Gittens ("Gittens").

Gittens testified at his deposition that he made several unsuccessful attempts to serve the Haans at a residential property owned by the Haans on Vallejo Street in San Francisco, California. During the first two attempts, on September 23, 1998 and November 4, 1998, Gittens spoke with Domigos F. Mendes, Jr. ("Mendes"), the Haans' housekeeper, who told Gittens that the Haans were not at home. Gittens attempted service again on November 16, 1998, but no one answered the door. Finally, on November 17, 1998, Gittens claims that he spoke with Mendes, who told him that he did not want to accept the papers. Mendes, however, submitted an affidavit in which he denied speaking with Gittens. It is undisputed though that Gittens left the papers at the front gate of the Haans' property and that Mendes later retrieved the papers and brought them into the house.

## DISCUSSION

Federal Rule of Civil Procedure 4(e) provides that service may be made "pursuant to

the law of the state ... in which service is effected." Plaintiff contends that service was proper under one of California's substituted-service provisions:

> If a copy of the summons and of the complaint cannot with reasonable diligence be personally delivered to the person to be served ..., a summons may be served by leaving a copy of the summons and of the complaint at such person's dwelling house [or] usual place of abode ... in the presence of a competent member of the household or a person apparently in charge of his or her office ... at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served at the place where a copy of the summons and of the complaint were left....

Cal. Civ. Pro.Code § 415.20(b).

The Haans do not dispute the applicability of section 415.20(b). Instead, they contend that plaintiff did not fully comply with the requirements of that statute. Specifically, the Haans argue that: 1) the San Francisco residence was not their "dwelling house or usual place of abode"; 2) the documents were not left with "a competent member of the household" who was informed of the nature of the documents; and 3) Gittens did not properly mail the papers following "service" on Mendes.

■ These three contentions must be considered in light of two important principles. First, the burden is on plaintiff to establish that there was effective service of process. "An affidavit of service constitutes prima facie evidence of effective service." *Polygram Merchandising, Inc. v. New York Wholesale Co.*, 2000 WL 23287, at *2 (S.D.N.Y. Jan.13, 2000), *aff'd sub nom. Polygram Merchandising, Inc. v. Wu–Wear, Inc.*, 242 F.3d 367 (unpublished decision); *Howard Johnson Int'l v. Wang*, 7 F.Supp.2d 336, 339 (S.D.N.Y.1998). Once this evidence has been contested, however, it is ultimately plaintiff's burden to demonstrate that service was proper. *Id.*

■ Second, the California Courts have liberally construed the substituted-service statute at issue here, section 415.20, in circumstances where the party sued had actual notice of the pending action. *See Ellard v. Conway*, 94 Cal.App.4th 540, 114 Cal.Rptr.2d 399, 401–402 (2001); *Stafford v. Mach*, 64 Cal.App.4th 1174, 75 Cal.Rptr.2d 809, 814 (1998); *Bein v. Brechtel–Jochim Group, Inc.*, 6 Cal.App.4th 1387, 8 Cal.Rptr.2d 351, 353 (1992). The purpose behind this substituted-service statute and its liberal construction was perhaps best described by the Fourth District of the California Court of Appeals:

> Before the 1969 legislation, substituted service on an individual defendant was not authorized in California. (Note, Substituted Service of Process on Individuals: Code of Civil Procedure Section 415.20(b) (1970) 21 Hastings L.J. 1257.)....We are guided, however, by the explanation of legislative intent in *Pasadena Medi–Center Associates v. Superior Court* (1973) 9 Cal.3d 773, 108 Cal.Rptr. 828, 511 P.2d 1180: "Although some decisions under pre–1969 statutes required strict and exact compliance with the statutory requirements (see 2 Witkin, Cal.Procedure (2d ed.1970) pp. 1390, 1413–1415), the provisions of the new law, according to its draftsmen, 'are to be liberally construed....'" As stated in the Nov. 25, 1968, Report of the Judicial Council's Special Committee on Jurisdiction, pp. 14–15: "The provisions of this chapter should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant, and in the last analysis the question of service should be resolved by considering each situation from a practical standpoint...." "The liberal construction rule, it is anticipated, will eliminate unnecessary, time-consuming, and costly disputes over legal technicalities, without prejudicing the right of defendants to proper notice of court proceedings.' (Li, Attorney's Guide to Cal.Jurisdiction and Process (Cont.Ed.Bar 1970) pp. 57–58.)" (Id., at p. 832, 511 P.2d 1180).

*Espindola v. Nunez*, 199 Cal.App.3d 1389, 245 Cal.Rptr. 596, 598 (1988).

Thus, since there is no dispute that the Haans received actual notice of the pendency

of this action, the provisions of section 415.20 should be liberally construed.[1] Keeping in mind these basic principles, the Court now turns to the Haans' objections to service.

## A. Was the Haans' San Francisco residence their "dwelling house or usual place of abode"?

■ The Haans contend that the San Francisco address is not their permanent address and that their actual residence is located in Florida. In support of this argument, the Haans have filed identical affidavits (ironically notarized in San Francisco County, California) which indicate that they own a home, receive mail, vote, register their cars, and belong to a country club in Florida. They also assert that their driver's licenses were issued in Florida. In their submissions, the Haans do not dispute their ownership of the Vallejo Street address in San Francisco, but they make no statement whatsoever concerning the nature of that residence.

■ The terms "dwelling house" and "usual place of abode" utilized in the California substitute service statute "take their meanings from federal law." Judicial Counsel Comment to Cal. Civ. Pro.Code § 415.20. Implicit in the Haans' argument is the faulty premise that a party can only have one such residence for purposes of service. Such a suggestion is "unrealistic" given our "highly mobile and affluent society." *National Development Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir.1991). "There is nothing startling in the conclusion that a person can have two or more 'dwelling houses or usual places of abode,' provided each contains sufficient indicia of permanence." *Id.*

The Haans may live for a time at their Florida residence, but I am not convinced that the San Francisco property is not also their "dwelling house." Examining the facts of this case, the Haans' San Francisco property contains sufficient indicia of ownership and use as a residence to support service at that address. During Gittens's initial attempts at service, Mendes informed Gittens that the Haans in fact owned the property, that they were present at the property approximately three days per month, and that they were presently on "vacation" in Florida. It is clear that the Haans employed Mendes as a housekeeper who was present at the house in their absence. Although Mendes claims that the Haans do not use that address for personal or business mail, the Haans have provided no information concerning the manner in which they use the San Francisco property. Therefore, Gittens's testimony, Mendes's affidavits, and the lack of information from the Haans, warrants the determination that this property was a dwelling house utilized by the Haans. In light of these facts, the Court finds that service was proper at the Haans' San Francisco address. *F.D.I.C. v. Scotto*, 1998 WL 357324, at *3–4 (N.D.N.Y. June 29, 1998)(service was proper where defendants maintained fully furnished home for their sole use, employed a caretaker, have sole ownership interest, and do not rent out the property); *Jaffe and Asher v. Van Brunt*, 158 F.R.D. 278, 280 (S.D.N.Y.1994)(service proper where defendant stays at that address while in the state, maintains a bedroom and clothes, and received mail there, and represented to others that location was his address).

## B. Was the summons left with "a competent member of the household"?

The Haans argue that their housekeeper, Mendes, was not a "competent member of

---

1. The Haans rely heavily on language found in *Zirbes v. Stratton*, 187 Cal.App.3d 1407, 232 Cal. Rptr. 653 (1986)(finding substituted service at parent's house to be insufficient). Specifically, the *Zirbes* court noted that "[i]n order to obtain in personam jurisdiction through any form of constructive service there must be strict compliance with the requisite statutory procedures." 232 Cal.Rptr. at 658 (quoting *Stamps v. Superior Court*, 14 Cal.App.3d 108, 92 Cal.Rptr. 151, 152). Interestingly, the *Stamps* case upon which the *Zirbes* court relied addressed service under section 415.40, which provides for mail service to persons outside the state of California. Although the Court made a broad pronouncement concerning strict compliance with constructive service requirements, the court relied exclusively on pre–1969 precedent. "The pre–1969 service of process statutes requiring strict and exact compliance have now been more liberally construed to effectuate service if actual notice has been received by the defendant." *Stafford*, 75 Cal. Rptr.2d at 814. More importantly, the *Stamps* court specifically limited its ruling, holding that "nothing herein contained shall be construed to apply to any service of process ... made pursuant to ... section 415.20." 92 Cal.Rptr. at 152.

the household," and was not, therefore, a person capable of receiving substituted service under the statute. In addition, the Haans argue that Mendes was not informed of the nature of the documents, as required by the statute. I disagree with both contentions.

■ Mendes was employed by the Haans as a housekeeper at the San Francisco property. As such, Mendes is "a person whose 'relationship with the person to be served makes it more likely than not that they will deliver process to the named party.'" *Ellard v. Conway*, 114 Cal.Rptr.2d at 403 (quoting *Bein*, 8 Cal.Rptr.2d at 354). In fact, the Haans do not claim that Mendes failed to inform them that he had received the summons and complaint.

Gittens testified that on the date of substituted service, November 17, 1998, he spoke to Mendes, who again informed him that the Haans were not at home. Although Mendes indicated that he did not want to accept service, Gittens told him that he was leaving the documents anyway.[2] Gittens Deposition, p. 28–30. Gittens then left the documents at the front gate of the property, in the "proximity" of Mendes. *Id.* at 30–32. Mendes admits that he picked up the documents and brought them into the house. Mendes July 28, 2000 Aff., ¶ 3.

The Court has reviewed Gittens's videotaped deposition and has been able to observe his testimony and assess his credibility. In contrast, Mendes's statements are presented only in affidavit form. As such, the Court is inclined to credit Gittens's testimony, which establishes that he and Mendes did discuss to a sufficient extent the nature of the documents before Gittens left them at the front gate of the Haans property. Liberally construing section 415.20(b), the Court finds that the documents were left with a competent member of the household who was informed of their contents.

## C. Was a first-class mailing of the papers executed following service?

■ Finally, section 415.20(b) requires that following substituted service, a copy of the summons and complaint must be mailed "to the person to be served at the place where a copy of the summons and of the complaint were left." Gittens testified that he did not *personally* mail these documents, Gittens Deposition, p. 12, but that his employer did. Tori Schaffer ("Schaffer") of Tori's Legal Services, the entity that hired Gittens to serve the Haans in California, mailed the documents from her office located in the Washington, D.C. area. *Id.*; Schaffer Aff., ¶ 18.

Unfortunately, when Schaffer initially mailed the return-of-service to this Court, she neglected to complete and attach her declaration of mailing. Schaffer Aff., ¶ 20. However, on June 25, 2001, Schaffer executed the declaration, indicating that the requisite copies were mailed on November 17, 1998. The declaration was then filed with this Court. The Haans have never claimed that they did not receive the follow-up mailing sent by Schaffer.

■ The mailing was proper. Section 415.20(b) does not require that the process server himself mail the copies. It is sufficient if the mailing is effected at his direction. Likewise, Schaffer's error in submitting the proof of mailing to this Court is not fatal. Pursuant to Fed. R. Civ. Pro. 4(*l*) "[f]ailure to make proof of service does not affect the validity of the service. The court may allow proof of service to be amended." Moreover, a request "for permission to amend the proof of service, rather than the process itself, rarely should be refused." *Nolan v. City of Yonkers*, 168 F.R.D. 140, 143 (S.D.N.Y.1996)(quoting 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1132 at 364 (2d ed. 1987 & Supp.1995)).

---

**2.** Gittens first testified that he spoke to Mendes through a glass door. Gittens Deposition, p. 28. Later, when counsel for the Haans refreshed his recollection by asking if he recalled an iron gate, Gittens remembered an outside buzzer and a security camera, and speaking to Mendes through the iron gate. *Id.* at 29–30.

## CONCLUSION

The Haans' motion to quash for insufficiency of service of process (Dkt.# 52) is hereby denied. The Haans are ordered to answer the complaint within 20 days of the entry of this order.

IT IS SO ORDERED.