[No. G011445. Fourth Dist., Div. Three. May 28, 1992.]

ROBERT BEIN et al., Plaintiffs and Respondents, v.
BRECHTEL-JOCHIM GROUP, INC., et al., Defendants and Appellants.

COUNSEL

Draper & Pherson and Douglas S. Draper for Defendants and Appellants.

McGuire & Walker and William M. Walker for Plaintiffs and Respondents.

OPINION

SONENSHINE, J.—Brechtel-Jochim Group, Inc., Thomas W. Brechtel, Linda Brechtel, Randy Jochim and Ann Jochim appeal from a default judgment. They argue the trial court had no personal jurisdiction over them. They maintain service of summons and complaint upon a guard at the entrance of a gated community does not meet the requirements of Code of Civil Procedure section 415.20[1] because a gate guard is neither a competent member of the household nor a person apparently in charge of the business. We disagree and affirm.

I

Robert Bein and William Frost & Associates (Bein) entered into written contracts with Brechtel-Jochim Group, Inc., et al., for engineering work. Bein, claiming it had completed the job, filed the underlying action when Brechtel refused to pay. The complaint alleged breach of contract and common counts, and named Brechtel and its sole shareholders, the Brechtels and the Jochims, as defendants. Asserting the individuals were alter egos of the corporation, Bein sought to pierce the corporate veil. The complaint prayed for damages in the sum of $69,347.01 plus interest, reasonable attorney fees and costs of the suit.

Bein attempted to serve the Jochims at their home on three separate occasions. They were finally served by substitute service on a "Linda Doe" when she emerged from the residence. As she was handed the papers, she ran back into the house and turned out the lights. Two days later, Bein mailed copies of the summons and complaint to the Jochims' residence. Proofs of service and declarations verifying the attempted service were filed with the court.

Service upon the corporation and the Brechtels was equally difficult. Bein unsuccessfully attempted to serve the business and the Brechtels at the Brechtels' residence. Each time, the process server was denied access to the

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

area by the gate guard stationed at the community's entrance. The process server finally resorted to substitute service upon the guard who, in response, threw the papers on the ground. As the process server drove away, he saw the guard retrieve the papers.

Bein mailed copies of the summons and complaint to the Brechtels' residence within a few days. Thereafter, the declaration of attempted service on the Brechtels and the corporation was timely filed, along with the proof of service of summons and complaint.

Neither the corporation nor its shareholders responded to the complaint. Bein filed requests to enter defaults as to all of the defendants and notified each defendant by mail.

At the default prove-up hearing, Douglas Frost, a Bein corporate officer, testified his counsel told him no stock was ever issued by Brechtel. Following testimony, the court entered default judgment against all named defendants in the amount prayed for in the complaint. No motions to quash service or set aside the judgment were filed by any of the defendants.

## II

Appellants challenge the court's jurisdiction, arguing service was ineffective.[2] They maintain Bein did not establish reasonable diligence in attempting to effectuate personal service. They are wrong. Section 415.20, subdivision (b) states: "If a copy of the summons and of the complaint cannot with reasonable diligence be personally delivered to the person to be served as specified in Section 416.60, 416.70, 416.80, or 416.90, a summons may be served by leaving a copy of the summons and of the complaint at such person's dwelling house, usual place of abode, usual place of business, . . . in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, . . . at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served at the place where a copy of the summons and of the complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing."

" 'Ordinarily, . . . two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow

[2]Appellants did not seek relief in the trial court; however, they attack the court's jurisdiction. Thus, they have not waived their right to appellate review of this issue. (*Bristol Convalescent Hosp.* v. *Stone* (1968) 258 Cal.App.2d 848, 859 [66 Cal.Rptr. 404]; see also *Corona* v. *Lundigan* (1984) 158 Cal.App.3d 764, 766-767 [204 Cal.Rptr. 846].)

substituted service to be made.' [Citation.]" (*Espindola* v. *Nunez* (1988) 199 Cal.App.3d 1389, 1392 [245 Cal.Rptr. 596].) The process server made three separate attempts to serve the Brechtels at their residence. Each time, the gate guard denied access. Substitute service was appropriate.

Appellants next maintain service on the gate guard fails to satisfy the statutory requirements.[3] Despite the great number of gated communities in the state, no California court has addressed this issue. Specifically, we must determine whether a residential gate guard is a person apparently in charge of the corporate office (§ 415.20, subd. (a)) and a competent member of the household (§ 415.20, subd. (b)).

■ We first note that pre-1969 service of process statutes required strict and exact compliance. However, the provisions are now to be liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant, " ' "and in the last analysis the question of service should be resolved by considering each situation from a practical standpoint. . . ." ' " (*Pasadena Medi-Center Associates* v. *Superior Court* (1973) 9 Cal.3d 773, 778 [108 Cal.Rptr. 828, 511 P.2d 1180].) The Supreme Court's admonition to construe the process statutes liberally extends to substituted service as well as to personal service. (*Espindola* v. *Nunez, supra,* 199 Cal.App.3d 1389, 1391.) "To be constitutionally sound the form of substituted service must be 'reasonably calculated to give an interested party actual notice of the proceedings and an opportunity to be heard . . . [in order that] the traditional notions of fair play and substantial justice implicit in due process are satisfied.' [Citations.]" (*Zirbes* v. *Stratton* (1986) 187 Cal.App.3d 1407, 1416 [232 Cal.Rptr. 653].)

---

[3]The requirements for substitute service on a person are found in section 415.20, subdivision (b), set forth *ante.*

Section 415.20, subdivision (a) provides: "In lieu of personal delivery of a copy of the summons and of the complaint to the person to be served as specified in Section 416.10, . . . a summons may be served by leaving a copy of the summons and of the complaint during usual office hours in his or her office with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served at the place where a copy of the summons and of the complaint were left. Service of a summons in this manner is deemed complete on the 10th day after such mailing."

Section 416.10 permits service on a corporation by delivery "(a) [t]o the person designated as agent for service of process . . . ; [¶] (b) [t]o the president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the corporation to receive service of process."

Section 417.10, subdivision (a) explains the procedure for substituted service on a corporation. "If served under Section 415.10, 415.20, . . . [s]uch affidavit shall recite or in other manner show the name of the person to whom a copy of the summons and of the complaint were delivered, and, if appropriate, his [or her] title or capacity in which he [or she] is served . . . ."

██ The gate guard in this case must be considered a competent member of the household[4] and the person apparently in charge. Appellants authorized the guard to control access to them and their residence. We therefore assume the relationship between appellants and the guard ensures delivery of process. *F. I. duPont, Glore Forgan & Co.* v. *Chen* (1977) 41 N.Y.2d 794 [396 N.Y.S.2d 343, 364 N.E.2d 1115] is instructive. There, the court found substitute service on an apartment building doorman was statutorily sufficient. A deputy sheriff twice attempted to serve defendants and, finding no one at home, left a card under the door. On the third try, when the doorman refused to allow him to go past the building's front entrance, the deputy served the doorman.[5] The court reasoned "it cannot be held as a matter of law on this record that the action of the doorman in refusing permission to the Deputy Sheriff to proceed to apartment 4A was not attributable for purposes of this statute to defendants." (*Id.* at p. 798 [364 N.E.2d at p. 1118].)[6] "While the defendant may control the acceptance of mail by his [or her] household, he [or she] may not thereby negate the effectiveness of service otherwise effective under the law." (*Bossuk* v. *Steinberg* (1982) 88 A.D.2d 358 [453 N.Y.S.2d 687, 689-690].)

██ Litigants have the right to choose their abodes; they do not have the right to control who may sue or serve them by denying them physical access. In *Khourie, Crew & Jaeger* v. *Sabek, Inc.* (1990) 220 Cal.App.3d 1009 [269 Cal.Rptr. 687], where a corporation attempted to avoid service by refusing to unlock its door, the court determined a "defendant will not be permitted to defeat service by rendering physical service impossible." (*Id.* at p. 1013.) ██ "The evident purpose of Code of Civil Procedure section 415.20 is to permit service to be completed upon a good faith attempt at physical service on a *responsible person* . . . ." (*Ibid.*, italics added.) Service must be made upon a person whose "relationship with the person to be served makes it more likely than not that they will deliver process to the named party." (*50 Court St. Assoc.* v. *Mendelson et al.* (1991) 151 Misc.2d 87 [572 N.Y.S.2d 997, 999].) Here, the gate guard's relationship with appellants made it more

---

[4] The Legislature's choice of the term household over family indicates that household is to be liberally construed. (See Note, *Substituted Service of Process on Individuals: Code Civ. Proc., § 415.20(b)* (1970) 21 Hastings L.J. 1257.)

[5] New York's corresponding service statute, 7 Civil Practice Law and Rules section 308, subdivision 2, authorizes personal service of process on a natural person "by delivering the summons within the state to a person of suitable age and discretion at the actual dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence . . . ."

[6] In contrast, where the doorman did not hinder entrance, substitute service upon him was deemed unacceptable. (*Reliance Audio Visual Corp.* v. *Bronson* (1988) 141 Misc.2d 671 [534 N.Y.S.2d 313].)

likely than not that he would deliver process to appellants. We note they do not claim they failed to receive notice of service.[7]

██ The corporation raises two other objections to its service. We are not impressed. First, they argue no good faith attempt was made to serve its designated agent. A good faith attempt to serve the agent was unnecessary because service may be made on *either* the corporation's agent *or* an officer. (*M. Lowenstein & Sons, Inc.* v. *Superior Court* (1978) 80 Cal.App.3d 762 [145 Cal.Rptr. 814].) Thomas Brechtel, as president of the corporation, was an appropriate person to be served on behalf of the corporation.

██ Appellants further maintain the declaration of attempted service was invalid because it failed to identify the person to be served on behalf of the corporation. But minor, harmless deficiencies will not be allowed to defeat service. (*Espindola* v. *Nunez, supra,* 199 Cal.App.3d 1389, 1391.)

III

██ Appellants argue the evidence was insufficient to find they were the alter ego of the corporation and to sustain the damage award. We note they did not seek relief from their default in the trial court. Sufficiency of the evidence is not reviewable unless relief from the default proceedings has been sought. ██ ██ ██ ██ (*Corona* v. *Lundigan, supra,* 158 Cal.App.3d at p. 767.)[8]

---

[7]There is an additional reason to find the service here adequate. Pursuant to section 415.20, subdivision (b), the guard gate constitutes part of the dwelling. Although the parties do not address this issue, we look to *F. I. duPont.* "In our analysis if a process server is not permitted to proceed to the actual [residence by the gate guard or some other employee] the outer bounds of the actual dwelling place must be deemed to extend to the location at which the process server's progress is arrested." (*F. I. duPont, Glore Forgan & Co.* v. *Chen, supra,* 41 N.Y.2d 794, 797 [364 N.E.2d 1115, 1117].)

[8]Moreover, the evidence was sufficient. To disregard the corporate entity and fasten liability upon individual stockholders, there must be " ' "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and . . . if the acts are treated as those of the corporation alone, an inequitable result will follow." ' " (*Las Palmas Associates* v. *Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1249 [1 Cal.Rptr.2d 301].)

Bein's complaint alleged that Brechtel-Jochim Group, Inc., the Brechtels, and the Jochims wholly owned and controlled each other and that piercing of the corporate veil was necessary to prevent great injustice and irreparable damage. Bein's corporate officer testified at the default prove-up hearing that counsel told him no stock had ever been issued by Brechtel.

As recognized in *Uva* v. *Evans* (1978) 83 Cal.App.3d 356 [147 Cal.Rptr. 795]: "The power of an appellate court to review the trier of fact's determination of damages is severely circumscribed. An appellate court may interfere with that determination only where the sum awarded is so disproportionate to the evidence as to suggest that the verdict was the result of

The judgment is affirmed. Respondents to recover costs on appeal.

Sills, P. J., and Wallin, J., concurred.

Appellants' petition for review by the Supreme Court was denied August 20, 1992.

---

passion, prejudice or corruption . . . or where the award is so out of proportion to the evidence that it shocks the conscience of the appellate court. [Citations.]" (*Id.* at pp. 363-364.)

The damages awarded here were exactly those prayed for in the complaint based on the contract, including interest, costs and attorney fees.