Filed 5/7/13  Solomon v. Baker CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JULIA SOLOMON, | B238706 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC086463) |
| v. | |
| MICHAEL B. BAKER, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County. Frank J. Johnson, Judge.  Reversed.

Philip Saltz for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

_____

## SUMMARY

Plaintiff and appellant Julia Solomon, as the personal representative of the estate of Steven Solomon, deceased, appeals from an order of the trial court deeming defendant and respondent Michael B. Baker's motion to set aside default to be a motion to quash service of summons and granting such motion. We reverse.

## FACTUAL AND PROCEDURAL SUMMARY

Appellant is the surviving spouse of Steven Solomon, an attorney, who used respondent, also an attorney, as an independent contractor on some of his cases. After the death of Steven Solomon, appellant and respondent made an oral agreement for respondent to continue providing legal services for Steven Solomon's clients and to pay the estate of Steven Solomon certain costs and a portion of the earned fees. After a dispute over whether respondent paid the estate of Steven Solomon the fees and costs due to it under the parties' agreement, appellant filed a complaint in August 2009 against respondent and then, after discovering respondent's law practice was the subject of litigation by the State Bar of California, appellant filed a first amended complaint on September 17, 2009 also naming the State Bar.

On September 27, 2009, a process server attempted to serve the first amended complaint and summons at respondent's last known residence, an apartment in Encino, only to determine that apartment was vacant and respondent had not left a forwarding address.

In March 2010, Philip Saltz, appellant's attorney, was contacted by an attorney for respondent (Linda Fermoyle Rice) to attempt to resolve the dispute and Saltz sent Rice via facsimile various documents including the first amended complaint and summons, but Rice stated she was not accepting service of the first amended complaint and summons and that she was not at liberty to disclose his residence. After various efforts, Rice indicated that she would not be of assistance in resolving the dispute.

According to Saltz's declaration, on May 7, 2010, appellant moved to intervene in the State Bar action, hand-serving on the same day a copy of the motion to intervene on respondent's attorney in the State Bar case (Arthur L. Margolis) as well as showing him a

copy of the first amended complaint and summons from this case; Margolis indicated he was not authorized by respondent to accept service and could not reveal his client's address.

One week later, on May 14, 2010, Saltz received a message from respondent to call him back. When Saltz called back, they discussed the lawsuit and Saltz's desire to try to settle without extensive litigation. Respondent told Saltz that "he could be reached at his son's house" and that Saltz "should use . . . his son's address", and listed his son's address in Nixa, Missouri. At respondent's request, Saltz mailed respondent a copy of the motion to intervene in the State Bar action to respondent's son's address.

Respondent opposed appellant's motion to intervene in the State Bar action and did not cooperate with appellant's attempts to gain access through the State Bar of respondent's files and records from his practice.

In July 2010, Saltz retained a Missouri process server to serve the first amended complaint and summons. On August 16, 2010, the process server filed a proof of service of summons stating that he served respondent "by substituted service" on August 3, 2010 and that he left the first amended complaint and summons "with or in the presence of . . . Ethan Baker," respondent's son, who was "**(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers." The proof of service of summons also indicated that the process server "thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left" on August 4, 2010 from Springfield, Missouri. In his declaration of due diligence, the process server stated that he was advised by appellant's attorney that respondent "reside[d] with his son, Ethan Baker" at his son's address in Nixa, Missouri. The process server made three attempts to serve respondent at his son's address but no one was home on those attempts. On his fourth attempt, Ethan Baker (hereinafter "Ethan") answered the door and "advised [the process server] that his father was not at home at that time" at which point the process server served the first amended complaint

3

and summons on Ethan and told him they were for his father and Ethan "replied that his father was expecting them."

After no response from respondent, on October 18, 2010, appellant filed a request for entry of default. On the same day, the clerk entered default as requested. A default prove-up hearing was scheduled for February 26, 2011.

According to a declaration from Saltz, on February 2, 2011, Saltz received a call from a different attorney for respondent (Robert C. Baker, no relation to respondent, hereinafter "Baker") advising him that respondent claimed that he was not properly served with process. Saltz asked Baker to convince respondent to settle the dispute and provide the State Bar with permission to give appellant's attorney access to respondent's files and records. On February 18, 2011, Baker and Saltz had a telephone conversation in which Baker asked that the default prove-up hearing be continued to give more time to "work this out." Saltz agreed and made requests for continuances. Negotiations were unsuccessful.

On August 31, 2011, respondent specially appeared to oppose the default hearing. Respondent filed two declarations from him, the first declaration (dated August 30, 2011) addressed the merits of the fee dispute and the other declaration (dated February 14, 2011) stated that he never lived at Ethan's address. According to this second declaration, respondent moved to Missouri in September 2009. In April or May 2010, Saltz "indicated that he wanted to send me some documents regarding the dispute between myself and the ESTATE OF STEVEN SOLOMON. I told him I was in the process of moving at the time and did not know what my new address was and requested that he send whatever documents he was sending to my son and my son would arrange to have them forwarded to me."

Also as part of respondent's opposition to the default hearing, Margolis filed a declaration (dated February 11, 2011) stating that on August 18, 2010, respondent called Margolis "and advised me that Phillip Saltz, on behalf of the Estate of Steven Solomon, had his process server go to [respondent's] son's house and hand a Summons and Complaint to the son. [Respondent] asked me to call Mr. Saltz and advise him that

4

[respondent] did not live at his son's address and that his son was not authorized to accept service on [respondent's] behalf." Margolis did as respondent requested and was told in reply by Saltz that respondent had told Saltz that respondent lived at Ethan's residence. Margolis also stated that "I have been aware of [respondent's] addresses and telephone numbers at which I have been in contact with him ever since he moved to Missouri, and none of the addresses have been what I understand to be the residence of [respondent's] son." Ethan filed a declaration (dated February 14, 2011) stating that in the summer of 2010, he answered the door and was asked if he knew Michael Baker, Ethan responded affirmatively and the process server stated "'We haven't been able to find him, so here'" and handed Ethan a summons and complaint. Ethan's declaration stated that respondent has never lived with him at any time since respondent moved to Missouri, Ethan was not authorized to accept service on his father's behalf and never indicated such to anyone, and that the process server did not ask if respondent lived at the residence.

On September 6, 2011, Saltz filed a declaration in support of appellant's request for default judgment. The prove-up hearing was held on September 9, 2011. On September 12, 2011, the trial court issued a default judgment.

On October 31, 2011, respondent filed a motion to set aside the default entered against him on October 18, 2010. Respondent argued that "[l]ack of . . . proper service is grounds to set aside a default judgment at any time." Attached to the motion to set aside were three of the declarations attached to respondent's prior August 2011 opposition to the default hearing: Margolis's February 11, 2011 declaration, Ethan's February 14, 2011 declaration, and respondent's February 14, 2011 declaration.

On November 21, 2011, appellant filed an opposition, arguing inter alia that service "has resulted in actual notice to [respondent], in time for him to defend the action," the declarations do not show that "any lack of actual knowledge in time to defend the action was not caused by his avoidance of service or inexcusable neglect," and that more than 180 days had elapsed after service on respondent of a written notice that default had been entered. Saltz filed a declaration detailing the conversations described above.

5

On November 29, 2011, respondent filed a declaration in reply to appellant's opposition to respondent's motion to set aside default. In his reply, respondent stated that he asked Saltz for copies of certain documents and respondent, "who was in the process of moving, suggested that he send those documents to [respondent's] son, and [respondent] would make arrangements to obtain them from him." Respondent also disputed Saltz's characterization that respondent had actual notice, stating that respondent "did not know that he had filed a new Complaint against me. I assumed he filed new documents in the State Bar action to take over my practice . . . " Respondent further stated that he "knew that his son had received some document through a process server but did not know that it represented a new Complaint" and that because he was represented in the State Bar action by Margolis and Margolis would handle any response necessary, respondent was "disinterested" and it "was not until I received a notice of Request for Entry of Default that I realized that the document served on my son was something different. By the time I received the notice for Request for Entry of Default, the default had already been granted days before."

At a hearing on December 2, 2011, the trial court granted respondent's motion to set aside the default. The trial court deemed respondent's motion to set aside the default to be not only a motion to set aside the default, but also a motion to quash service of the summons as the basis of the motion to set aside was "extrinsic fraud; namely, that they [sic] were not served as stated." The trial court stated, "[d]ealing with the motion to quash first, I think the moving party [(respondent)] has made a sufficient showing that they [sic] did not live at that address, that the substituted service that was attempted to have been made was not successful. There's virtually nothing in [appellant's] opposition that would counter that assertion by the moving party." The trial court found a case cited by appellant on service at commercial mail box to be distinguishable as "that's not that circumstance at all." Rather, the trial court found "All you really have was information that documents could be mailed to that address and that the [respondent] would eventually get them. You don't have any proof that he lived there or that he resided there or that the person that you tried to make substituted service on actually lived there. . . ."

6

The trial court also stated with respect to Ethan, "I don't think he's an agent for service of process based" on respondent's statement that his son would accept papers for him. At the conclusion of the hearing, when the clerk asked if "we need an answer to be filed," the court responded "[n]o, the motion was granted; so we're starting over again, essentially. I don't think there's any notice issue here, truthfully, but whatever."

Appellant filed a timely notice of appeal.

## DISCUSSION

On appeal, appellant contends that the trial court erred in granting the motion to quash service, arguing that substitute service on Ethan was valid as being made at his usual mailing address, that respondent had actual notice of the lawsuit in time to defend, and Ethan had "'ostensible authority'" to accept service of process for respondent.[1]

We review de novo whether service of process was valid. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1200.)

Code of Civil Procedure section 415.20, subdivision (b), provides that "[i]f a copy of the summons and complaint cannot with reasonable diligence be personally delivered . . . a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, [] *usual mailing address* . . . in the presence of a competent member of the household or *a person apparently in charge of his or her . . . usual mailing address* other than a United States Postal Service post office box . . . and by thereafter mailing a copy [] at the place where a copy of the summons and complaint were left." (Code Civ. Proc., § 415.20, subd. (b), italics added.) The Supreme Court has admonished that the process statutes, including for substituted service, are to be liberally construed. (*Bein v. Brechtel-Jochim Group, Inc.* (1992) 6 Cal.App.4th 1387, 1392.)

Here, the trial court focused exclusively on whether respondent resided at his son's address, i.e., whether it was respondent's "dwelling house" or "usual place of abode." As the trial court stated, "You don't have any proof that he lived there or that he

---

[1] Respondent did not file a brief.

resided there or that the person that you tried to make substituted service on actually lived there. . . ." But section 415.20 also provides that substitute service can be made at a person's "usual mailing address" by leaving a copy of the summons and complaint with "a person apparently in charge" of the "usual mailing address." As the trial court stated, "All you really have was information that documents could be mailed to that address and that the [respondent] would eventually get them." And as respondent had stated in a declaration, "I told [Saltz] I was in the process of moving at the time and did not know what my new address was and requested that he send whatever documents he was sending to my son and my son would arrange to have them forwarded to me." Thus, although his son's address was not respondent's residence, it was the address he provided for purposes of receiving mail.

"To be constitutionally sound the form of substituted service must be 'reasonably calculated to give an interested party actual notice of the proceedings and an opportunity to be heard . . . [in order that] the traditional notions of fair play and substantial justice implicit in due process are satisfied. [Citations.]" (*Zirbes v. Stratton* (1986) 187 Cal.App.3d 1407, 1416.) Substituted service "'must be made upon a person whose "relationship with the person to be served makes it more likely than not that they will deliver process to the named party." [Citation.]'" (*Hearn v. Howard*, *supra*, 177 Cal.App.4th at p. 1203.) Here, the substitute service was on respondent's son, clearly someone with the type of relationship which made it more likely than not that he would deliver process to respondent, especially since respondent had identified his son as the person to whom documents could be sent and who would arrange to have them forwarded to respondent.[2]

---

[2] We note that the process server checked that substitute service was made upon a competent member of respondent's household, rather than the box stating that the substitute service was made upon a person apparently in charge at the usual mailing address of the person to be served. Because "minor, harmless deficiencies will not be allowed to defeat service" (*Bein v. Brechtel-Jochim Group, Inc.*, *supra*, 6 Cal.App.4th at p. 1394), we conclude that the error in the proof of service does not render service of process on respondent void.

Because we agree that the trial court erred in not considering whether substitute service was valid under the "usual mailing address" language of section 415.20, subdivision (b), we do not consider appellant's remaining arguments.

**DISPOSITION**

The order quashing the service of summons is reversed. Appellant is entitled to recover her costs on appeal.

NOT TO BE PUBLISHED.

CHANEY, J.

We concur:

ROTHSCHILD, Acting P. J.

JOHNSON, J.