Filed 9/16/13  Quartz Hill, LLC v. Linton CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| QUARTZ HILL, LLC, | B237988 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LC089421) |
| v. | |
| TATIANA KATERINA LINTON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Huey P. Cotton, Jr., Judge.  Affirmed.

Tatiana Katerina Linton, in pro. per., for Defendant and Appellant.

Weiss & Hunt, Thomas J. Weiss and Hyrum K. Hunt for Plaintiff and Respondent.

_____

Attorney Tatiana Katerina Linton appeals from an order denying her motion to vacate a default and default judgment in an action alleging she misappropriated money that belonged to the plaintiff.  We affirm the order.

**FACTS**

## I.      The Litigation

Quartz Hill, LLC filed the current case in 2010 against a number of defendants involved in business dealings which resulted in a loss to the company of roughly $350,000.  Quartz Hills's complaint alleged:  In 2009, Quartz Hill agreed to loan money to defendant Mario Nordet in connection with a business venture to "flip" real properties.  In October 2009, Nordet and a defendant escrow officer at Green Forest Escrow Corporation, Patricia Bohe, represented to Quartz Hill that a sum of $305,000 was needed quickly to close a sale for real property located in Toluca Lake.  Quartz Hill was told that the buyer was defendant Gasprom, Inc., a corporation formed by defendant and appellant Linton, and that Gasprom would provide Quartz Hill with a deed of trust to secure repayment of the money that Quartz Hill fronted for the purchase.  Quartz Hill loaned the $305,000 to Nordet, and Nordet provided Quartz Hill with a promissory note.

In December 2009, Quartz Hill contacted Green Forest Escrow to determine whether escrow had closed.  At that point, Bohe at Green Forest Escrow stated that "all of the net proceeds from the transaction had been remitted to . . . Linton."  Through its attorney, Quartz Hill thereafter contacted Linton a number of times by letter, requesting the return of Quartz Hill's money.  Linton did not respond.[1]

---

[1]      It is unclear from the complaint whether there ever truly was a sale contemplated, or whether there was a planned sale that did not close.  Outside of the four corners of the complaint, the record shows that Green Forest Escrow issued a check in December 2009 for $324,150, payable to Quartz Hill, and that Linton somehow got possession of the check and deposited it into her attorney/client trust account.  The State Bar has initiated charges against Linton based on her dealings with Quartz Hill.  Materials in the record show that Linton failed to respond to the State Bar's charges.

## II. Service of the Summons and Complaint

Between June 2 and 7, 2010, Deputy Sheriff Ernie Estrada attempted to serve Linton four times at her law office. Estrada's proof of service shows that Linton was not in during those attempts, and he received no calls back from her office. On June 14, 2010, Estrada served Linton with the summons, complaint, and other identified documents by substitute service on Veronica Zarate, a receptionist at Linton's law office. Estrada thereafter mailed copies of the documents to Linton at her law office's address.[2]

On June 21, 2010, Quartz Hill's attorney faxed a letter to Linton reminding her that she had been sued, and urging her to return Quartz Hill's money. At some point, Quartz Hill's attorney noticed depositions. On July 21, 2010, Linton faxed the following letter to Quartz Hill's attorney: "I am not available for deposition on July 22, 2010. Also, the [person most knowledgeable] for Gasprom, Inc. will not be available on July 26, 2010 as well. Please take depositions of [*sic*] calendar."

On August 18, 2010, Quartz Hill filed a request for entry of default as to Linton. The clerk of the superior court entered Linton's default as requested on the same day.

On October 8, 2010, the court signed an order granting Quartz Hill's motion to compel Linton and Gasprom, Inc. to appear for depositions within 20 days. At the same time, the court imposed sanctions in the amount of $1680. The court's written order further stated: "Enforcement of this order does not waive the existing defaults against Ms. Linton and Gasprom, Inc." Linton did not appear for her deposition, nor pay the sanctions, nor do anything about the default.

On June 13, 2011, Linton failed to appear as a subpoenaed witness at trial of Quartz Hill's case against Green Forest Escrow. The court continued the trial to June 16, 2011, and issued a body attachment against Linton with a bail of $50,000. The court ordered Quartz Hill's counsel to give notice to Linton. On June 14, 2011, Quartz Hill

---

[2]     The record includes two proofs of service. One proof of service shows that Deputy Estrada served Linton as follows: "On behalf of: Linton, Tatiana Katrina under: CCP 416.90." The second proof of service shows that Deputy Estrada served Gasprom as follows: "On behalf of: Gasprom, Inc. under: CCP 416.10."

faxed a letter to Linton informing her of the warrant and her required appearance for trial on June 16, 2011. Linton did not respond and failed to appear at trial.

On July 12, 2011, Quartz Hill served Linton with notice of Quartz Hill's right to seek punitive damages.

On August 30, 2011, Quartz Hill presented its default prove-up case to the trial court. On September 2, 2011, the court entered judgment in favor of Quartz Hill and against Linton. The judgment awards $324,150 in damages, with prejudgment interest from December 8, 2009, and punitive damages of $972,450. The total owed under the judgment exceeds $1.3 million.

## III. The Motion to Vacate

On October 14, 2011, Linton (individually) filed a motion to vacate the default and default judgment entered against her under Code of Civil Procedure section 473, subdivision (d),[3] on the ground the default judgment was void. The motion was supported by a declaration from the receptionist at Linton's law office, Veronica Zarate. Zarate's declaration stated that she worked at Linton's law office, but was "never in charge of the office," and "never authorized by Ms. Linton to receive any correspondence addressed to her personally." Zarate explained that another attorney in the office was always present in the office during Linton's absences. Zarate acknowledged that she "did take the papers concerning the lawsuit on Quartz Hill." According to Zarate, the server gave her papers for Gasprom, Inc., but "[t]here was not a separate summons for Ms. Linton." Zarate stated that Linton was in the office when the server was leaving the papers, meeting with a client. She also noted that the server had not asked whether Linton was in the office on that occasion. Zarate "put the papers in the 'miscellaneous' box," and had "no idea whether Ms. Linton saw the papers." Zarate stated that she never received a mailed copy of the summons.

---

**3** All further section references are to the Code of Civil Procedure unless otherwise specified.

In her own declaration, Linton stated that she was on sick leave at the time of the attempted service, although she occasionally came to the office to meet clients or pick up files before going to court. She declared that she had never been served with a summons, "either personally or by mail." She implicitly admitted that she had at least one copy of the summons because she attached it to Zarate's declaration. Linton stated that, even if the summons had been served at her office, she "would have had no idea whether it was addressed to [her] as the agent for Gasprom, Inc. or to [her] as an individual."

Quartz Hill filed an opposition in which it outlined the litigation history summarized at the outset of this opinion. In addition, Quartz Hill presented evidence showing that the State Bar had initiated disciplinary proceedings against Linton, and that she had failed to respond in those proceedings. Linton filed a reply, including evidentiary objections to the State Bar materials.

On December 5, 2011, the trial court overruled Linton's evidentiary objections, and denied Linton's motion to vacate.

## DISCUSSION

Linton contends the trial court erred in denying her motion to vacate the judgment. We disagree.

### I. Service of Process

Under section 473, subdivision (d), a court "may, on motion of either party after notice to the other party, set aside any void judgment . . . ." Linton argues the evidence established that she was never properly served with Quartz Hill's action for a variety of reasons. As a result, the trial court never acquired personal jurisdiction over her and the judgment is void. Not so.[4]

---

[4] Part of Linton's opening brief on appeal concerns whether her motion to vacate the judgment under section 473, subdivision (d), as being void, was timely filed. As we read the trial court's order denying her motion, timeliness was not a dispositive issue in the court's ruling. As a result, we do not address the issue.

Section 415.10 states: "A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served." Section 415.20 provides alternate means of service. Code of Civil Procedure section 415.20, subdivision (b), provides: "If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, . . . a summons may be served by leaving a copy of the summons and complaint at the person's . . . usual place of business . . . *in the presence of a . . . person apparently in charge of his or her office [or] place of business*, . . . at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing." (Italics added.)

First, Linton argues that Deputy Estrada improperly attempted substitute service under section 415.20, subdivision (b), because he did not exercise reasonable diligence to accomplish personal service. She argues that because Deputy Estrada neither asked whether Linton was in her office nor attempted to find her in her office on the day he left the summons and complaint with her receptionist, he did not exercise reasonable diligence. We are not persuaded.

"'Ordinarily, . . . two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substitute service to be made.'" (*Espindola v. Nunez* (1988) 199 Cal.App.3d 1389, 1392; and see also *Bein v. Brechtel-Jochim Group, Inc.* (1992) 6 Cal.App.4th 1387, 1392 [finding that substitute service was appropriate when the "process server made three separate attempts to serve the Brecthels at their residence. Each time, the gate guard denied access"]; *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1202 [finding that service requirements were satisfied when server "attempted to personally serve appellant at the business address on her letterhead and reported by the California State Bar by appearing at that address on three separate occasions on three different days"].) Here, Deputy Estrada surpassed these requirements. It is uncontested that he attempted to serve Linton on four separate

6

occasions at her usual place of business, at different times of day. We find Deputy Estrada's diligence sufficiently reasonable to permit substitute service on his fifth visit to her law office.

Linton next contends that service was improper because Zarate was not authorized to receive the summons from Deputy Estrada. We reject Linton's argument. Under the service statutes, Deputy Estrada could leave a copy of Linton's summons with a person "apparently in charge" of Linton's office. (§ 415.20, subd. (b).) The purpose of this requirement is to ensure that the person's "'relationship with the person to be served makes it more likely than not that they will deliver process to the named party.'" (*Bein v. Brechtel-Jochim Group, Inc., supra,* 6 Cal.App.4th at p. 1393.) Here, Zarate was a receptionist for Linton's office, and Deputy Estrada had explained the general nature of the documents as well as whom they were for. Even accepting that there was another attorney who was "in charge of the office" during Linton's absences, this does not mean that Zarate was not a person "apparently in charge" when Deputy Estrada went to Linton's office on the date of substitute service. Deputy Estrada needed only to serve a person who was "apparently in charge," which he did. There was no error in leaving Linton's summons with Zarate.

Linton next argues service was improper because Deputy Estrada served an incomplete summons and "lied" in his proof of service when he stated that he served Linton and Gasprom, Inc. with two complete, separate summonses. As noted above, Deputy Estrada's proofs of service indicated that he served Linton with two summonses; one served "On behalf of: Linton, Tatiana Katrina under: CCP 416.90," and the other "On behalf of: Gasprom, Inc. under: CCP 416.10." In Linton's motion to vacate, however, she presented a single copy of a summons which shows it was served "by personal delivery on (date): 6-14-10." To the extent the copy of the one proof service proffered by Linton may be viewed to contradict Deputy Estrada's affidavits of service, we are not inclined to find error in the judgment. In denying the motion to vacate, the trial court expressly stated that Linton's evidence failed to rebut the presumption of the

7

facts established by Deputy Estrada's proofs of service. The trial court made a credibility call on the evidence, and we accept it.

Linton's next argument is that substitute service was incomplete because Deputy Estrada mailed the copy of the summons to her office rather than mailing it to her personal address. We disagree. Once Deputy Estrada exercised reasonable diligence and provided substitute service by leaving a copy of Linton's summons with Zarate, he was required to send a copy of the summons with "postage prepaid to the person to be served *at the place where a copy of the summons and complaint were left*." (§ 415.20, subd. (b), italics added.) The deputy did so by mailing a copy of the summons to Linton's office. He had no legal obligation to mail the summons anywhere else. To the extent Zarate declared that she never received any mailed copies of the summons, the trial court rejected her statement and we do too.

Linton contends that Deputy Estrada's proof of service did not satisfy the requirements of section 417.10, subdivision (a), because it did not name Linton as the person served and only notes "Defendant not in." Again, we disagree. Under section 417.10, subdivision (a), in the proof of service, "[t]he affidavit shall recite or in other manner show the name of the person to whom a copy of the summons and of the complaint were delivered, and, if appropriate, his or her title or the capacity in which he or she is served, and that the notice required by Section 412.30 appeared on the copy of the summons served, if in fact it did appear." The proof of summons only requires the name of the person to whom the summons was delivered. Here, that person was Zarate. Estrada's affidavit names Zarate as the person with whom a copy of the summons was left and provides her title and in what capacity she was given the summons. There was no problem with this aspect of service.

Finally, Linton argues that the trial court erred in ruling that Linton had not rebutted the presumption under Evidence Code section 647 that service was proper. We disagree.

8

Evidence Code section 647 provides: "The return of a process server registered pursuant to Chapter 16 (commencing with Section 22350) of Division 8 of the Business and Professions Code upon process or notice establishes a presumption, *affecting the burden of producing evidence*, of the facts stated in the return." (Italics added.)

Linton is correct in asserting that the presumption only arises if the proof of service establishes compliance with the statutory requirements. But she is incorrect in claiming the proof of service here was non-compliant for all the reasons we set forth above. Her secondary argument, that her evidence should have been viewed as sufficient to rebut the presumption that service was proper, likewise fails. As noted, the trial court's decision to deny Linton's motion largely reflects a credibility call it made after a consideration of Linton's evidence. We find no reason to second guess the trial court. Because we are not convinced that Linton's evidence – as a matter of law – defeats the presumption, we will not reverse.

## II. Linton's Admission that She Failed to Respond to State Bar Inquiries was Properly Admitted

Linton argues that the trial court prejudicially erred in overruling her objection to admission of the evidence of her unresolved State Bar charges. Linton claims the evidence of the State Bar charges could not be used against her for any purpose because they are not resolved. However, the exhibits from the State Bar's investigation were not considered for an improper purpose. As a result, Linton once again fails to demonstrate error.

The State Bar charges arise from the same facts as Quartz Hill's civil complaint for damages. At the hearing on the motion to vacate, three exhibits (9, 10, and 11) from the investigation were admitted. They consisted of the State Bar notice of disciplinary charges, appellant's response to the charges, and a copy of Linton's status as a member of the California State Bar as reflected on the bar website. Linton filed a motion with the trial court, arguing the investigation into her conduct should not be used as evidence of her guilt or for any other purpose.

9

Of course Linton is correct that "[a] statement of charges is not evidence" of her guilt. (*Layton v. Merit System Commission* (1976) 60 Cal.App.3d 58, 68.) But, the exhibits were not offered as evidence of Linton's guilt of the charges. Instead, Quartz Hill introduced the exhibits to show Linton had a pattern of failing to respond to matters involving the Quartz Hill transaction. The exhibits demonstrated that Linton expressly admitted the State Bar allegation that she failed to respond in any manner to State Bar's inquiry into the matter. This was relevant to show she failed to respond to the summons in this case too. The trial judge who heard this motion was not like a jury who might be misled into considering the evidence for more than the limited purpose for which it was admitted.

In any event, we find that any error was harmless. In its ruling denying Linton's motion to vacate the default judgment, the trial court made no reference to the State Bar related evidence. Nor is there anything in the record to suggest that it influenced the trial court's decision to deny Linton's motion to vacate the default judgment.

## DISPOSITION

The order is affirmed. Respondent is awarded costs on appeal.

BIGELOW, P. J.

We concur:


FLIER, J.


GRIMES, J.

10