Filed 10/21/15  National Bank of Calif. v. Vildosola CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NATIONAL BANK OF CALIFORNIA,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>LORENZA RAMOS DE VILDOSOLA,<br><br>     Defendant and Appellant. | D065897<br><br><br>(Super. Ct. No. 37-2011-00093140-CU-BC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

Bankhead & Howard, Murray M. Bankhead; Karcher Harmes and Kathryn E. Karcher for Defendant and Appellant.

Levinson Arshonsky & Kurtz, Steven N. Kurtz, Anne C. Manalili and Helen Kim Colindres for Plaintiff and Respondent.

In this case, the defendant's family trust borrowed in excess of $2 million from a bank and, as security for the loan, the defendant provided the bank with a continuing guaranty of the obligation.  According to the bank, payment on the loan fell into default,

and the bank sued the defendant on the guaranty. In loan documents she executed, the defendant identified a home in La Jolla as her address and the bank accomplished service of its complaint on the defendant by way of substituted service on a person at that address. The substituted service was made only after two attempts to serve the defendant personally at the address were unsuccessful. Following substituted service on the defendant, an attorney contacted the bank's attorney on defendant's behalf and for several months engaged in negotiation with the bank. The negotiations were unsuccessful, and the bank took the defendant's default and obtained a default judgment against her.

After entry of the default judgment, the defendant moved for relief from the judgment. She asserted that substituted service was improper and that the residence where substituted service was accomplished was not her home. The trial court found that the evidence defendant presented was not credible and did not overcome the presumption that service was proper. Accordingly, the trial court denied the defendant's motion.

We affirm the trial court's order. The record presented fully supports the trial court's factual determinations and, in light of those determinations, the trial court did not abuse its discretion in denying defendant's motion.

FACTUAL AND PROCEDURAL HISTORY

A. Loan

In July 2007, plaintiff National Bank of California (the bank) lent the defendant Lorenza Ramos de Vildosola's family trust $2.265 million. Vildosola's daughter, Lorenza, was the trustee of the family trust and signed the promissory note. The loan was secured both by a home in La Jolla, located at 7106 Vista Del Mar Avenue, and a personal guaranty executed by Vildosola. Both Vildosola and Lorenza signed loan

2

documents which directed that all notices concerning the loan be provided to them at the Vista Del Mar Avenue address. The personal guaranty further required Vildosola to notify the bank if she changed her address.

Prior to execution of the loan, the 7106 Vista Del Mar Avenue address was listed as Vildosola's address in a statement filed with the Secretary of State with respect to a family real estate corporation, G & L Properties. The statement was signed by Vildosola's late husband, Gustavo Vildosola, and listed the Vista Del Mar address as his address and the corporation's address as well as Vildosola's address. The statement was renewed by the corporation without change in 2006.

For her part, later in 2007 Lorenza listed the Vista Del Mar residence as the address for a limited liability consulting company, LVR Consulting Services (LVR), she operated; the statement Lorenza signed and filed with the Secretary of State with respect to LVR listed the Vista Del Mar address as her address as well.

B. Service

In 2011, required payments on the loan had not been made, and the bank filed a complaint against both Vildosola as guarantor and Lorenza as trustee of the family trust. The complaint also named Victor Vildosola (Victor), Vildosola's son, as a defendant. The complaint alleged, in addition to claims on the promissory note and guaranty, allegations that Vildosola, Lorenza, and Victor had engaged in a scheme to hide Vildosola's assets from the bank by use of transfers between family trusts and corporations.

On July 9, 2011, Victor was personally served at his home in San Diego.

The bank attempted to personally serve Vildosola at the Vista Del Mar Avenue

3

residence twice; thereafter, the bank's process server accomplished substituted service on Vildosola by serving a woman who resembled Lorenza and who, when asked, identified herself as "Lorenza."  The substituted service was made on July 11, 2011, and a proof of service was filed by the bank on August 22, 2011.  Personal service on Lorenza was made at the same time substituted service on Vildosola was accomplished.

C.  Negotiations

The record indicates that at the time the bank's complaint was served on Victor, Vildosola and Lorenza, the bank had commenced foreclosure proceedings on the Vista Del Mar home.  One week after the complaint was served, the bank's attorneys were contacted by telephone by an attorney, Chris Ramsey, who stated that he was representing the Vildosola family and that Vildosola was herself very anxious to avoid foreclosure on the Vista Del Mar Avenue property.

Between July 2011 and May 2012, the bank's attorneys and Ramsey communicated by telephone and email fairly regularly.  Initially, Ramsey conveyed the family's offer to convey the proceeds from the sale of a luxury condominium in Mexico City to the bank in lieu of the deed of trust it held on the Vista Del Mar home; later, he conveyed an offer from Vildosola and Victor to pay the bank $248,500 to settle the bank's claims.  These proposals were rejected by the bank.

The bank took Vildosola's default in November 14, 2011.  Between November 2011 and June 2012, the bank's attorneys repeatedly advised Ramsey that the bank would obtain a default judgment against Vildosola unless the matter was resolved.  On October 11, 2012, the trial court, on the bank's motion and after the bank had made a sufficient showing at a prove-up hearing, entered judgment against Vildosola, Lorenza and Victor

4

in the amount of $2.6 million.

D.  Motion to Vacate

Prior to entry of judgment, Lorenza made a motion to quash service on her; she argued she did not live at the Vista Del Mar Avenue home and that no service on her was made there.  The trial court rejected her contentions and denied her motion to quash.

On November 11, 2013, 13 months after entry of judgment, Vildosola moved to set aside the default and default judgment.  Vildosola largely repeated Lorenza's earlier contention that Lorenza was never served at the Vista Del Mar home.  In support of her motion, Vildosola offered declarations that she and Lorenza executed in Mexico.  The declarations stated that the Vista Del Mar home was neither her residence nor place of business, that Lorenza was travelling in Europe at the time the bank's process server delivered the summonses and complaints to the Vista Del Mar Avenue address and that the home had been leased to a family from Tucson at the time of service.

Attached to Lorenza's declarations were what she stated were true and correct copies of her Mexican passport, an itinerary, and airline tickets, which she asserted were proof that she was travelling abroad on July 11, 2011, when the bank's service on her was purportedly made.

Both declarations were executed in Mexicali, Baja California and were made under penalty of perjury under the laws of California.

The bank objected to Vildosola's and Lorenza's declarations on, among other grounds, that the declarations did not comply with Code of Civil Procedure section 2014, in that they were neither executed before a United States consular official nor a judge of record in Mexico.  The trial court sustained the bank's Code of Civil Procedure section

5

2014 objections to the declarations.

Vildosola also offered the declaration of a La Jolla real estate agent, who stated that a second real estate agent told her that the tenants at Vista Del Mar had contacted the second agent because of attempts to serve Vildosola and Lorenza.

Vildosola also argued, as did Victor in a companion motion, that they had a defense on the merits to the bank's complaint. They asserted that the loan was part of an overall scheme to purchase a "stranger-owned life insurance" (STOLI) policy on Vildosola's life. In such schemes, the policy is used as a means of attracting investors, who, in exchange for a share of the eventual proceeds of the policy, make the required premium payments. (See *Lincoln Nat'l Life Ins. Co. v. Gordon R.A. Fishman Irrevocable Life Trust* (C.D.Cal. 2009) 638 F.Supp.2d 1170, 1177–1178.) In 2009, the Legislature made such schemes unlawful in California. (See Ins. Code, § 10110.1, subd. (d).)

For its part, in opposing the motion the bank produced evidence that: both Vildosola and Lorenza repeatedly identified the Vista Del Mar home as their residence and place of business; the process server positively identified Lorenza as the person who accepted the summonses and complaints; one week after service, Vildosola contacted her son Victor, who in turn asked Ramsey to represent her.

The bank also contested the validity of the itinerary and ticket Vildosola produced. The bank pointed out that the documents set forth different travel times.

In ruling on Vildosola's motion, the trial court stated: "[S]omebody is flat out lying." The court then denied Vildosola's motion.

### DISCUSSION

In her principal contention on appeal, Vildosola argues the trial court erred in

6

sustaining the bank's objection to her declaration and the declaration of Lorenza. As we have noted, both declarations were executed in Mexicali, Baja California under penalty of perjury of the laws of the State of California. As we explain more fully below, we agree with the trial court that the declarations were not admissible over the bank's objection.

I

We begin our consideration of Vildosola's claims by recognizing that service on her was presumptively valid. The bank's proof of service, which was timely filed in the trial court, states that after making two attempts to personally serve Vildosola at the Vista Del Mar residence, the summons and complaint were left with Lorenza and thereafter mailed to Vildosola at the Vista Del Mar address. Such substituted service is authorized by Code of Civil Procedure section 415.20.[1] Where, as here, the plaintiff has filed a proof of service, which, on its face, states that the defendant was validly served, "[s]uch proof presumptively establishes the fact of proper service, but it may be impeached and the lack of proper service shown by contradictory evidence." (*M. Lowenstein & Sons, Inc. v. Superior Court* (1978) 80 Cal.App.3d 762, 770; see *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441-1442 [filing a proof of service that complies with the statutory requirements creates a rebuttable presumption that service was proper].)

We must also recognize that the trial court's credibility determinations are binding on us on appeal. (*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 421.)

II

As we have noted, in attempting to overcome the presumption of valid service,

---

[1]     All further statutory references are to the Code of Civil Procedure.

Vildosola submitted her declaration stating that the Vista Del Mar home is neither her residence nor place of business and Lorenza's declaration asserting that she was traveling abroad at the time service was made at the Vista Del Mar address. The trial court properly sustained the bank's objection to the declarations.

Testimonial evidence may be taken, and presented as evidence, in three ways: by affidavit, by deposition, or by oral examination in court. (§§ 2002 & 2005.) Affidavits are written declarations made under oath "before any officer authorized to administer oaths." (§ 2012.) When properly executed, affidavits may be used in and are preferred in motion proceedings. (§ 2009; Cal. Rules of Court, rule 3.1306(a).)

If an affidavit is taken in a foreign country, it "may be taken before an ambassador, minister, consul, vice-consul, or consular agent of the United States, or before any judge of a court of record having a seal in such foreign country." (§ 2014.)

In lieu of an affidavit sworn under oath before an official authorized to take oaths, a party may offer a declaration which states that it is made under the penalty of perjury under the laws of the State of California. (§ 2015.5.) However, a sworn declaration under penalty of perjury is not permissible in cases where an oath is required to "be taken before a specified official other than a notary public." (*Ibid*.)

As the bank contends, because both declarations were made in Mexico, section 2014 permitted them if they were taken before an official specified in section 2014. As declarations made in a foreign country, they were not admissible under section 2015.5 as declarations made under penalty of perjury of the laws of the State of California.

We reject Vildosola's contention that, in this context, the requirements of section 2014 are permissive and that a declaration under penalty of perjury under section 2015.5

8

is an alternative means of presenting evidence.  The short answer to this argument is that section 2015.5 provides an alternative, except in those cases when it does not.

By its express terms, a section 2015.5 declaration may be used in lieu of an affidavit, except in cases where an oath is required before an official *other than a notary*. The "other than a notary" limitation on the exception is of some pertinence here.  Under section 2013, a sister state affidavit is valid *if taken before a notary*.  (§ 2013.)  Thus, because a sister state affidavit may be taken before a notary, the exception to section 2015.5 does not apply and declarations under penalty of perjury are an alternative to sister state affidavits.

On the other hand, while section 2014 permits affidavits made in foreign countries, they are valid only if taken before officials specified in the statute and those officials *do not include notaries*.  Thus, section 2014 falls within the exception to section 2015.5, because it requires an oath before an official *other than a notary*.

The practical implication of the statutes, as we have interpreted them, is that a declaration under penalty of perjury is permissible if the declaration is made here in California or in any other state.  (§§ 2013 & 2015.5.)  More formality is required if a declaration or affidavit is executed in a foreign country; in those cases, the declarant or affiant must engage in the more formal and cumbersome process of going before a judge of a court of record or a United States consular official or agent, and swear an oath in the presence of the official.  (§§ 2014 & 2015.5.)  This distinction is consistent with the realities of personal jurisdiction over residents of the United States as opposed to jurisdiction over foreign nationals in foreign countries as well as United States citizens who are abroad.  In the former case, the declarant is going to recognize that he or she is

9

likely subject to both the civil and criminal processes of our state's courts. A foreign citizen making a statement in his or her own country is, as a practical matter, going to feel somewhat less accountable to the processes of our courts and thus, in order to assure that statements from them are made with an appropriate level of reliability and trustworthiness, the Legislature has expressly required that they be made with somewhat more formality. As the court suggested in *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 612-618 when it rejected a litigant's argument that substantial compliance with section 2015.5 was sufficient, strict construction of the statute is needed to meet the Legislature's desire to enhance the trustworthiness of out-of-state declarations.

In sum then, the trial court did not err in sustaining the bank's objection to the two declarations.

### III

Even if the trial court had admitted the two disputed declarations, the declarations would not have altered the outcome in the trial court or here on appeal. The trial court's statements on the record and its ruling make it clear that it did not find Vildosola, her daughter or her son credible. The trial court's determination of credibility is of course binding on us, where, as here, it is fully supported by the record. (*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 421.) In particular, the conflict between what Vildosola and Lorenza told the bank when applying for the loan about their residence—that they resided at the Vista Del Mar address—and their later claim that it was not their residence or place of business, substantially undermined the trustworthiness of all their statements.

10

Not only were the disputed declarations less than credible, as a technical matter they did not defeat the validity of the bank's service. Even if the trial court indulged the notion that Lorenza was not at the home when the summons and complaint were delivered, section 415.20 only requires that they be left with someone apparently in charge at the residence. (See *Bein v. Brechtel-Jochim Group, Inc.* (1992) 6 Cal.App.4th 1387, 1393.) The record shows that even if the process server did not deliver the papers to Lorenza, he did deliver them to someone in charge at the Vista Del Mar address, as required by the statute.

In addition, we note the undisputed fact that, within a week of service, an attorney contacted the bank on behalf of the Vildosola family and discussed Vildosola's concern about losing the Vista Del Mar home; thereafter, the attorney communicated settlement offers on behalf of both Vildosola and Victor, including an offer to pay the bank $284,500. This course of conduct by counsel, over several months, is circumstantial evidence Vildosola and her son had actual notice of the bank's lawsuit against them. Actual notice, when it is established, gives the plaintiff the benefit of a more liberal construction of the service of process statutes. (*Bein v. Brechtel-Jochim Group, Inc., supra,* 6 Cal.App.4th at p. 1392.)

11

DISPOSITION

The order is affirmed.  Plaintiff National Bank of California to recover its costs of appeal.


BENKE, J.

WE CONCUR:


McCONNELL, P. J.


McDONALD, J.